684 A.2d 1037

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kelvin MORRIS, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 23, 1996.

Decided Oct. 30, 1996.

---

Bernard L. Siegel, Philadelphia, for K. Morris.

Catherine Marshall, Philadelphia, for Commonwealth.

Robert A. Graci, Harrisburg, for Office of the Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE NIGRO and NEWMAN, JJ.

## OPINION

NEWMAN, Justice.

■■■■ This is an appeal from an order of the Court of Common Pleas of Philadelphia County that denied Kelvin Morris' (Morris) Petition for Relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541 *et seq.* (PCRA).[1] We affirm the Order of the Court of Common Pleas (PCRA court).

---

1. This Court has exclusive jurisdiction of appeals from final orders denying post conviction relief in cases in which the death penalty has been imposed. 42 Pa.C.S. § 722(4), 42 Pa.C.S. § 9546(d).

## I. *ISSUES IN CASE*

The following issues are before this Court:

1. Did the PCRA court err when it denied an evidentiary hearing on allegations that the trial and/or appellate counsel was ineffective in the following respects?

 a. "Life–Qualifying" and "Death–Qualifying"[2]—For their failure to identify and exclude prospective jurors whose beliefs would be incompatible with their role as capital jurors because of their probable inability to consider life imprisonment even if appropriate under the law;

 b. for their inadequacy in not presenting an alibi defense;

2. While qualifying potential jurors, there may be questions dealing with "death-qualifying" and "life-qualifying" those individuals. Because the parties and the PCRA court have used these phrases, we will utilize these terms in this Opinion and explain them here.

 During jury selection in cases in which the prosecution seeks the death penalty, some potential jurors might state that they have unalterable religious or moral scruples that would prevent them from imposing the death penalty. It would be unfair to the prosecution if any individuals on the jury opposed the death penalty so strongly that they could not impartially apply the law. Accordingly, prosecutors can exclude an individual who has views on capital punishment that would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *Commonwealth v. Holland*, 518 Pa. 405, 543 A.2d 1068 (1988). The process of asking questions during voir dire to identify those individuals and subsequently exclude them from the jury is known as "death-qualifying" the jury. This Court has repeatedly held that the death qualification process is consistent with the guarantees of a fair trial. *Commonwealth v. Lambert*, 529 Pa. 320, 603 A.2d 568 (1992).

 Analogously, some potential jurors might strongly believe that all defendants found guilty of first degree murder should be sentenced to death. It would be unfair to a defendant if any members of the jury opposed life sentences so vehemently that they could not impose a life sentence under any circumstances. To prevent the service of a juror incapable of returning a verdict of life imprisonment, a defendant is permitted to pose questions during voir dire to identify those potential jurors pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). The process of identifying and excluding potential jurors who would be unable to return a sentence of life imprisonment is known as "life-qualifying" the jury. Morris claims that trial counsel failed to life-qualify the jury.

 c. because of their failure to call certain witnesses to testify; and

 d. for their failure to investigate the existence and analysis of physical evidence;[3] and

2. Did the PCRA court err when it denied Morris' PCRA petition without notice and without a hearing despite the mandatory language of Pa. R.Crim.P. Rule 1507(a)?

## II. FACTS

In *Commonwealth v. Morris,* 522 Pa. 533, 537–38, 564 A.2d 1226, 1228 (1989), we summarized the facts of this case as follows:

This action [began] on August 9, 1980, when at approximately 3:00 a.m., the police were summoned to investigate an alarm at the Pep Boys Auto Parts Store at 48th and Girard Avenue in Philadelphia, Pennsylvania. Upon arrival an officer, Alexander Stephens, discovered that the front window to the store had been broken.

Subsequently the manager of the store, Bob McDonald, arrived and both went through the store to make sure everything was in order. Upon finding everything in order the police officer left and the manager then called the Franklin Glass Company to get the window boarded up for the night.

At approximately 4:30 a.m., a William Linaberry, an employee of the glass company, arrived at the store and began boarding up the broken window. Approximately 10 minutes later, while Mr. Linaberry and Mr. McDonald were outside the store discussing the broken window, an individu-

3. Numerous attorneys have represented Appellant, and he has made "layered" allegations of ineffective assistance of counsel. The attorney who represented Appellant in pre-trial proceedings up to and including the motion to suppress evidence was permitted to withdraw due to illness. Another court-appointed lawyer represented Appellant at trial but withdrew when Appellant challenged his effectiveness. Still another attorney was appointed for post-verdict motions but was permitted to withdraw and the court appointed yet another attorney, who represented Appellant through sentencing. Still, a different attorney represented Appellant on direct appeal. After Appellant filed a PCRA petition *pro se,* the PCRA court appointed present counsel.

al crossed the street from the ARCO service station and asked what had happened. This man was carrying a yellow bag and subsequently produced a hand gun and then stated to Mr. McDonald, "put the money in the bag." McDonald replied "what money" and with that, the man shot Mr. McDonald twice, killing him. The appellant was subsequently identified as the perpetrator of the robbery/murder and was arrested October 22, 1980, in Suffolk City, Virginia.

(Paragraph structure added). At trial, Mr. Linaberry identified Morris as the person who fired the gun and shot the decedent. Another witness, twelve-year-old Ronald Johnson (Johnson),[4] also identified Morris as the man who shot Mr. McDonald. The Commonwealth also presented the testimony of James Willie, who stated that Morris moved into his home in Suffolk City, Virginia, and Morris told him that he shot a man while robbing a Pep Boys store in Philadelphia. Also, Police Officer Thomas Newson testified that he arrested Morris in Suffolk City, Virginia, and that after he advised Morris of his rights, Morris admitted that he was wanted in Philadelphia for shooting a store clerk and he said he "did it to keep up with the crowd." Notes of Testimony, November 23, 1983, p. 93.

On November 30, 1983, a jury found Morris guilty of first degree murder[5] and robbery,[6] and fixed the penalty for the murder conviction at death. On direct appeal pursuant to 42 Pa.C.S. §§ 722(4) and 9711(h)(1), we affirmed the judgment of sentence. On April 2, 1990, Morris filed a PCRA petition *pro se*. Court-appointed counsel filed an amended petition on October 18, 1993. After the Commonwealth filed an answer and motion to dismiss the amended petition, the PCRA court scheduled oral argument on March 31, 1994. At argument on the Commonwealth's motion, the parties rested on the plead-

4. Johnson testified that he lived approximately one block away from the crime scene, and that at the time of the murder, he was walking to a soda vending machine at a gas station across the street from the Pep Boys store.

5. 18 Pa.C.S. §§ 2501, 2502(a).

6. 18 Pa.C.S. § 3701.

ings and the PCRA court took the case under advisement to determine whether to grant Morris an evidentiary hearing or deny the petition without an evidentiary hearing. On January 18, 1995, the court issued an Opinion and Order denying Morris' PCRA petition without holding an evidentiary hearing. The court did not give Morris prior notice of its intention to dismiss the petition without a hearing pursuant to Pa. R.Crim.P. 1507(a).[7]

Defense counsel then presented the PCRA court with a motion to vacate the dismissal in which he alleged that the court violated Rule 1507(a). On February 6, 1995, the PCRA court heard oral argument on Morris' motion to vacate the dismissal, and denied the motion by order dated February 7, 1996.[8]

## III. *ELIGIBILITY FOR PCRA RELIEF*

To be eligible for PCRA relief, Appellant must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects found in Section 9543(a)(2),[9] and his issues have not

7. Rule 1507 provides:
 (a) The judge shall promptly review the motion, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the motion and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 10 days of the date of the notice. The judge thereafter shall either order the motion dismissed, or grant leave to file an amended motion, or direct that the proceedings continue.

8. The record, as it was originally transmitted to this Court, contained the notes of testimony for oral argument on Morris' Motion to Vacate, but neither the motion nor the PCRA court's order disposing of the motion were included in the record. Appellate courts may only consider facts that have been duly certified in the record on appeal. *Commonwealth v. Bracalielly*, 540 Pa. 460, 658 A.2d 755 (1995). Pursuant to Pa.R.A.P.1926, the record has been supplemented with copies of Morris' motion and the PCRA court's order denying the motion.

9. Section 9543 of the PCRA provides, in pertinent part:

been previously litigated. An issue is deemed finally litigated for purposes of the PCRA if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). If the allegations of error have not been finally litigated, Appellant must also establish that those allegations of error have not been waived and that, if waived, the conditions listed in Section 9543(a)(3)(ii) or (iii) must be satisfied.[10] 42 Pa.C.S. § 9543(a)(3). An issue is deemed waived "if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, [or] on appeal. . . ." 42 Pa.C.S. § 9544(b). Finally, Appellant must demonstrate that the fail-

(a) General rule.-To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

\* \* \* \* \* \*

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

(iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.

(vi) The imposition of a sentence greater than the lawful maximum.

(vii) A proceeding in a tribunal without jurisdiction.

10. Section 9543(a)(3) provides:

That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

ure to litigate the issue prior to,· or during trial, or on direct
appeal could not have resulted from any "rational strategic or
tactical decision by counsel." 42 Pa.C.S. § 9543(a)(4).[11]

Ineffective assistance of counsel provides a basis for relief
under the PCRA only when it "so undermined the truth-
determining process that no reliable adjudication of guilt or
innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).
To warrant relief, a defendant must prove that the underlying
claim is of arguable merit, counsel had no reasonable basis for
the act or omission in question, and but for counsel's act or
omission, the outcome of the proceedings would have been
different. *Commonwealth v. Douglas,* 537 Pa. 588, 645 A.2d
226 (1994), *citing Commonwealth v. Pierce,* 515 Pa. 153, 527
A.2d 973 (1987).

■ A court may dismiss a PCRA petition if there are no
genuine issues concerning any material fact. Pa.R.Crim.P.
1507, 1508.[12] The purpose of Rules 1507 and 1508 is to assure

---

**11.** The Commonwealth argues that all of the issues raised in Appellant's
post-conviction petition are waived for failure to raise those issues on
direct appeal. While we agree that some of the issues presented could
have been raised on direct appeal and thus, could be deemed waived
pursuant to the PCRA, we will nevertheless address all of Appellant's
claims since the trial court addressed all of those claims and because it
is this Court's practice to address all issues arising in a death penalty
case irrespective of a finding of waiver. *Commonwealth v. DeHart,* 539
Pa. 5, 650 A.2d 38 (1994).

**12.** Rule 1508 provides:

(a) Except as provided in Rule 1507, the judge shall order a hearing
on all material issues of fact raised by the motion and answer, if any.
The judge may deny a hearing on a specific issue of fact when a full and
fair evidentiary hearing upon that issue was held at trial or at any
proceeding before or after trial. The judge shall schedule the hearing
for a time that will afford the parties a reasonable opportunity for
investigation and preparation, and shall enter such interim orders as
may be necessary in the interests of justice.

(b) The judge, on motion or request, shall postpone or continue a
hearing to provide either party a reasonable opportunity, if one did not
exist previously, for investigation and preparation regarding any new
issue of fact raised in an amended motion or amended answer.

(c) The judge shall permit the defendant to appear in person at the
hearing and shall provide the defendant an opportunity to have counsel.

(d) Upon the conclusion of the hearing the judge shall:

(1) determine all material issues raised by the motion, if any;

that an evidentiary hearing be held on a post-conviction petition if there are factual issues to be resolved. *Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467, *cert. denied*, —— U.S. ——, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995). However, when there are no disputed factual issues, an evidentiary hearing is not required under the rules. *Id.*

## IV. *INEFFECTIVE ASSISTANCE OF COUNSEL*

### A. *Voir Dire*

■ Morris argues that trial counsel was ineffective during voir dire because he did not "life-qualify" the jury, which means that counsel, on voir dire, would have identified and excluded prospective jurors who would be unable to consider a sentence of life imprisonment if the jury returned a verdict of guilty of first degree murder. According to Morris, the sentence of death is invalid because trial counsel did not ask additional questions to be certain that there were no individuals on the jury who automatically opted for the death penalty without considering the trial court's instructions regarding mitigation.

Our Court first addressed the issue of "life-qualifying" juries in *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987), where we held that trial counsel is not ineffective *per se* if he or she did not identify and eliminate from the jury individuals who would not impose a sentence of life imprisonment in a proper case. We stated in *Jermyn* that in order to warrant relief based on a claim that trial counsel failed to specifically ask prospective jurors if they would automatically

(2) issue an order denying relief or granting a specific form of relief and stating the grounds on which the case was determined, and issue any supplementary orders appropriate to the proper disposition of the case; and

(3) state on the record, or issue and serve upon the parties, findings of fact and conclusions of law on all material issues.

(e) If the judge disposes of the case in open court at the conclusion of the hearing, the judge shall advise the defendant on the record of the right to appeal from the final order disposing of the motion and of the time within which the appeal must be taken. If the case is taken under advisement, the judge shall advise the defendant of the right to appeal by certified mail, return receipt requested.

impose the death penalty if a defendant were convicted of first degree murder, an appellant must establish that trial counsel's failure to ask life-qualifying questions resulted in the impanelling of one or more jurors who would instinctively impose the death penalty.

We noted that the appellant in *Jermyn* raised this issue in the abstract, did not challenge counsel's overall performance during *voir dire,* and did not present the record of *voir dire* proceedings for our review. We held that the mere fact that counsel may not have posed the specific question concerning whether a prospective juror would elect a sentence of life imprisonment in an appropriate case does not justify the conclusion that counsel failed to assure that a fair and impartial jury was selected. We rejected similar claims in *Commonwealth v. Porter,* 524 Pa. 162, 569 A.2d 942, *cert. denied,* 498 U.S. 925, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990), and *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (1991), based upon our reasoning in *Jermyn.*

In *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), the United States Supreme Court held that a trial court's refusal to allow counsel to inquire whether potential jurors would automatically impose the death penalty when convicting the defendant violated a defendant's right to due process. The first case in which we revisited this issue since *Morgan* was *Commonwealth v. Blount,* 538 Pa. 156, 647 A.2d 199 (1994), where the appellant alleged that trial counsel was ineffective for not life-qualifying the jury. We distinguished *Morgan,* in which the trial court refused to allow defense counsel to ask life-qualifying questions, and we held that although trial counsel did not attempt to life-qualify the jury, it did not necessarily follow that the appellant did not have a fair and impartial jury. In *Blount,* we affirmed the appellant's judgment of sentence because the appellant did not establish he was prejudiced and therefore entitled to relief under *Pierce.*[13]

13. In *Pierce,* we held that a defendant alleging ineffective assistance of counsel must plead and prove the following:

(1) the claim has arguable merit;

In this case, the record reflects that the trial court conducted a thorough *voir dire* and properly instructed the jury concerning imposition of the death penalty. The court asked each juror whether they could be fair and whether they could follow the court's instructions notwithstanding any personal beliefs they had. Our review of the record demonstrates that jury selection was conducted fairly, and Morris has not pointed to any specific evidence in the record that indicates any jurors could not have imposed a life sentence if warranted by the facts and law. The mere fact that Morris' trial counsel did not ask life-qualifying questions does not form a basis for relief under the PCRA. *Jermyn.* Thus, Morris failed to establish that trial counsel was ineffective during *voir dire* and the PCRA court therefore did not err when it dismissed this issue without conducting an evidentiary hearing.

## B. *Failure to Present an Alibi Defense*

Morris next challenges trial counsel's effectiveness for failure to present testimony of two alleged alibi witnesses, Morris' former girlfriend, Christina Clark, and her mother, Margaretta Wise. He also alleges ineffectiveness of post-verdict counsel, who was different from trial counsel, because he did not raise these issues before the trial court. Moreover, Morris claims that his appellate counsel, who was not the same attorney who represented him at post-verdict motions, was also ineffective because he did not request an evidentiary hearing *nunc pro tunc* to present these witnesses.

On direct appeal, Morris argued that trial counsel was ineffective for not calling alibi witnesses Christina Clark and Margaretta Wise, and attached as exhibits to his appellate brief documents purporting to be statements of these witnesses. This Court considered and rejected those claims. *Morris,* 522 Pa. at 543 n. 10, 564 A.2d at 1226 n. 10. Morris has attached these same documents as exhibits in the PCRA

(2) there was no reasonable basis for counsel's act or omission; and

(3) the defendant was prejudiced by the act or omission.

*Id.* at 158–162, 527 A.2d at 975–976.

310

proceedings below.[14] Since he raised this issue on direct appeal, Morris is barred from litigating this issue again in a PCRA petition. 42 Pa.C.S. §§ 9543(a)(3), 9544(a)(2).

 Moreover, to establish that counsel was ineffective for failing to present a witness, a defendant must prove: the existence and availability of the witness, that trial counsel was aware of, or had a duty to know of the witness; that the witness was willing and able to cooperate and appear on the defendant's behalf, and the proposed testimony of the uncalled witness would have been helpful to the defense asserted at trial. *Commonwealth v. Stanley*, 534 Pa. 297, 632 A.2d 871 (1993). Trial counsel testified at post-verdict motions that he did not remember Morris telling him about an alibi, and that if Morris had informed him of alibi witnesses, he would definitely have pursued such a defense. (N.T. 12/9/85, p. 42). After considering this testimony, the sentencing court denied Morris' post-verdict motions. Morris presented no additional affidavits in the PCRA proceedings below to establish a basis for relief under *Stanley*. Because trial counsel's testimony defeated this claim, there is no basis for this Court to conclude that appellate counsel should have requested a hearing *nunc pro tunc* to present these witnesses. *See Blount* (counsel is never ineffective for not raising meritless claims). Accordingly, this claim has no merit and the PCRA court did not err when it denied Morris' request for an evidentiary hearing on this issue.

## C. *Failure to Call Certain Witnesses*

 Morris argues that trial counsel was ineffective because he did not present the testimony of Joseph Flowers (Flowers) at trial. According to Morris, Flowers was a critical defense witness because he made a pre-trial photo identification of Morris' brother, Artie Morris, as the person who shot Mr. McDonald in this case. This issue was raised in written post-verdict motions, but Morris' first post-verdict attorney

14. The PCRA court found that the handwritten statements of the two alleged alibi witnesses were "clearly penned by the same individual."

orally withdrew this claim at the evidentiary hearing on post-trial motions on November 12, 1986. After that, Morris' second post-verdict attorney entered his appearance in this case and requested a continuance to produce several witnesses, including Flowers. However, Flowers was never produced as a witness and the sentencing court found this claim to be without merit when it denied post-verdict motions. Appellate counsel then raised this issue on direct appeal, and we also rejected it. This issue is therefore finally litigated and not cognizable under the PCRA. 42 Pa.C.S. §§ 9543(a)(3), 9544(a)(2).

Furthermore, Morris has not explained Flowers' failure to appear in court when he raised this issue in post-verdict motions and he did not produce him in the PCRA proceedings below. Even Morris agrees that he and his brother closely resembled each other; therefore, testimony that Flowers misidentified Morris' brother would not necessarily be exculpatory. In addition, Morris presented two other witnesses at trial who testified that they were in the area at the time of the shooting and that Morris was not the man that they saw. Flowers' testimony would therefore have been cumulative, and we cannot conclude that the absence of this testimony undermined the verdict. Morris has therefore failed to establish that he is entitled to relief for this claim pursuant to *Stanley.*

 Morris also challenges trial counsel's decision to introduce into evidence an enlarged photograph of Morris' brother, Artie Morris, instead of presenting Artie Morris in person before the jury. Morris claims that the jury should have been able to observe the resemblance between the brothers while they were both in the courtroom. However, trial counsel's decision to use a photograph was a reasonable course of action in this case because prior misidentifications of Morris were photo identifications. Counsel will not be faulted for choosing one reasonable course over another, *Commonwealth v. Ly,* 528 Pa. 523, 599 A.2d 613 (1991). Accordingly, this claim is also without merit.

#### D. *Failure to Investigate Physical Evidence*

■ Finally, Morris asks us to grant him a new trial because trial counsel did not attempt to discover whether the police recovered a yellow plastic bag that eyewitnesses described him as carrying and, if so, whether it bears detectable fingerprints. Morris speculates that this bag might have exonerated him if it had fingerprints that were not his. In the alternative, Morris theorizes that if trial counsel discovered that the police did not recover the bag, he could have argued that the police handled this investigation incompetently.

■ Morris has not alleged that this yellow plastic bag was in existence at the time of trial, or that it existed when he filed this PCRA petition. Thus, this claim is entirely speculative. We have repeatedly held that ineffectiveness of counsel claims may not be raised in a vacuum. *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992); *Commonwealth v. Silo*, 509 Pa. 406, 502 A.2d 173 (1985); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). A determination of ineffectiveness cannot be based on conjecture concerning alleged physical evidence that has never been admitted into evidence. Given the strength of the Commonwealth's case against Morris, which included identifications by two eyewitnesses and Morris' inculpatory statements to two other witnesses, there is no basis for us to conclude that trial counsel's course of action so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). This claim is therefore without merit.

### V. *Notice of Dismissal*

Morris argues that the lower court erred when it dismissed his PCRA petition without giving him prior notice pursuant to Rule 1507(a). We discussed the application of Rule 1507(a) in *Banks*, 540 Pa. at 156, 656 A.2d at 473, and stated that the purpose of this notice is to afford the petitioner an opportunity to respond to and explain why dismissal would be inappropriate. We conclude that the PCRA court did, in fact, violate

Rule 1507(a), but Morris is not entitled to relief because the PCRA court corrected its error.

 The Commonwealth argues that the notice requirement of Rule 1507(a) does not apply in the present case because the Court dismissed the PCRA petition after appointing counsel and setting the matter for argument on the Commonwealth's dismissal motion. However, the Commonwealth is incorrect because the language of the rule specifically requires the PCRA court to state in the notice the legal reasons the court relies on when it dismisses a petition. This language indicates that Rule 1507(a) is intended to allow a petitioner an opportunity to respond to the reasons relied upon by the court, regardless of whether the petitioner has responded to the Commonwealth's motion. While a PCRA court can dismiss a petition based on reasons argued by the Commonwealth, a court is not limited to accepting the Commonwealth's rationale and could dismiss a petition for other reasons.

Rule 1507(a) is intended to guarantee that a petitioner has an opportunity to respond to the court's reasons for dismissal, which may not necessarily coincide with the Commonwealth's reasons. Thus, notice pursuant to Rule 1507(a) is required when a court dismisses a petition without an evidentiary hearing, regardless of whether the petitioner has been permitted to respond to the Commonwealth's arguments. The PCRA court was therefore required to give Morris advance notice of its intention to dismiss the PCRA petition without an evidentiary hearing pursuant to Rule 1507(a) in this case.

 Although the PCRA court initially violated the notice requirement of Rule 1507(a), it subsequently corrected this error when it convened a hearing for argument on Morris' motion to vacate the dismissal order. The record from the argument on the motion to vacate the dismissal order exhibits that Petitioner's counsel had received a copy of the court's opinion and order before that argument, and was therefore provided an opportunity to respond to the court's reasons for dismissing the petition. After listening to the arguments of

Morris' attorney and the attorney for the Commonwealth, the PCRA court denied Morris' Motion to Vacate the Dismissal of his PCRA petition. Thus, no relief is due because the purpose of Rule 1507(a) was satisfied when the PCRA court corrected its earlier violation of the rule when it permitted Morris' attorney to respond to its reasons for dismissing the PCRA petition without an evidentiary hearing.

## VI. *CONCLUSION*

Accordingly, we affirm the Order of the Court of Common Pleas denying Kelvin Morris' Petition for Post–Conviction Relief and direct the Prothonotary of the Supreme Court to transmit the complete record in this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

ZAPPALA, J., concurs in the result.