J-S17019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LARRY SCOTT KNIPPLE, | |
| Appellant | No. 901 WDA 2015 |

Appeal from the PCRA Order May 13, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001796-2007

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 31, 2016**

Appellant, Larry Scott Knipple, appeals from the order entered on May 13, 2015, that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.[1]

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth's brief in this matter was due on October 19, 2015. On that date, the Commonwealth filed a motion for an extension of time in which to file its brief. In an order filed on October 19, 2015, this Court granted the motion and directed that the Commonwealth's brief was due on or before December 18, 2015. No brief was filed. On January 11, 2016, the Commonwealth filed a second motion for an extension of time in which to file its brief. Before this Court could rule on the second motion, the Commonwealth filed its untimely brief on January 14, 2016. Thus, the Commonwealth's second motion for an extension is denied as moot. Nevertheless, we note our displeasure with the Commonwealth's failure to comply with this Court's order.

The background of this case was set forth by a prior panel of this Court as follows:

> In 2004, [Appellant] attempted to adopt K.S., a fourth grade child, from the state of Maine. N.T., 12/8/08, at 130. When K.S. first moved into [Appellant's] house, [Appellant] took him shopping "a lot" and purchased gifts very often. *Id*. at 132-33. Thereafter, [Appellant] became obsessed with treating K.S. like an infant, to the point of wanting to feed K.S. from a bottle. *Id*. at 134. At bedtime, [Appellant] began kissing K.S. mostly on the neck area. *Id*. K.S. testified at trial that at one point in time, while K.S. was lying on the couch, [Appellant] laid down beside him and rested his hand on K.S.'s genitals. *Id*. at 135. In another incident, [Appellant] fondled K.S. under the guise of washing K.S. in the bathtub. *Id*. at 136.
>
> After K.S. had resided with [Appellant] for about two weeks, [Appellant] began showing K.S. pornography of young children engaging in sexual intercourse with other young children and with adults. *Id*. at 139, 141. According to K.S., it started out as a weekly occurrence, then daily, then three times a day. *Id*. at 142. Subsequently, [Appellant] engaged in several instances of anal intercourse with K.S. *Id*. at 143-46, 159, 162-63.
>
> Three months after moving in with [Appellant], K.S. was removed from the home, at [Appellant's] request, and returned to Maine. *Id*. at 111-12. While in Maine, [Appellant] visited K.S., taking him to ski on the weekends and other activities. *Id*. at 168. [Appellant] did not assault K.S. in Maine. *Id*. at 169. However, [Appellant] bought K.S. an "overabundance of stuff." *Id*. Subsequently, when K.S. was accused of assaulting another child, K.S. reported the assaults by [Appellant]. *Id*. at 187.
>
> Prior to trial, [Appellant] sought to compel the discovery of records from Maine regarding K.S.'s pre-incident behavior, his prior accusations of sexual assault, and his sexual conduct. When, after a hearing, the trial court denied discovery and denied certification of its Order for interlocutory appeal, [Appellant] filed a Petition for allowance of appeal with this Court. This Court denied allowance of appeal.
>
> A jury subsequently convicted [Appellant] of [three counts of rape of a child, three counts of involuntary deviate sexual

intercourse [("IDSI")], and two counts of indecent assault]. After his conviction, [Appellant] was found to be a sexually violent predator and thereafter, the Commonwealth filed a Notice of mandatory sentence. At sentencing, [Appellant's] IDSI convictions merged with his convictions for rape of a child. The trial court imposed consecutive sentences of 120 months to 240 months for each of [Appellant's] three rape convictions. The sentence exceeded the 78-month aggravated range, but was within the statutory maximum range of 240-280 months. The trial court sentenced [Appellant] to prison terms of 12 to 60 months for each of [Appellant's] two indecent assault convictions, with the sentences to be imposed concurrent with each other but consecutive to [Appellant's] sentences for his rape convictions. Thereafter, [Appellant] filed the instant timely appeal. The trial court ordered [Appellant] to file a Concise Statement of matters complained of on appeal and [Appellant] complied with the trial court's Order.

***Commonwealth v. Knipple***, 899 WDA 2009, 6 A.3d 566 (Pa. Super. filed July 19, 2010) (unpublished memorandum at 1-3). After review, this Court affirmed Appellant's judgment of sentence. ***Id***. The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on May 27, 2011. ***Commonwealth v. Knipple***, 23 A.3d 540 (Pa. 2011).

On May 23, 2012, Appellant filed a timely PCRA petition. The PCRA court granted Appellant partial relief due to counsel's failure to file a post-sentence motion challenging the discretionary aspects of Appellant's sentence. PCRA Opinion, 12/6/12, at 8.[2] The court denied all other grounds for PCRA relief pertaining to ineffective assistance of counsel. ***Id***. at 1-8.

_____

[2] In its December 6, 2012 opinion and order, the PCRA court specifically noted that its decision granted Appellant permission to file a post-sentence motion *nunc pro tunc*, but it was "not to be construed as a final PCRA ruling." PCRA Opinion, 12/6/12, at 8.

Thereafter, Appellant was granted permission to file a *nunc pro tunc* post-sentence motion to modify his sentence. The trial court held a hearing on Appellant's post-sentence motion and found Appellant's sentence was "overly harsh." Order, 3/25/13, at 2. The trial court then resentenced Appellant to an aggregate term of nineteen and one-half to thirty-nine years of incarceration. ***Id***.

In an order filed on April 15, 2013, the PCRA court determined that the March 25, 2013 PCRA and resentencing order was now final. On April 26, 2013, Appellant filed an appeal to this Court asserting claims of ineffective assistance of counsel and sentencing court error. In disposing of that appeal, a panel of this Court held that when the trial court resentenced Appellant, it imposed a new judgment of sentence and that Appellant's appeal was a direct appeal only and not an appeal from the denial of PCRA relief. ***Commonwealth v. Knipple***, 787 WDA 2013, 106 A.3d 173 (Pa. Super. filed August 22, 2014) (unpublished memorandum at 3-4). The panel then affirmed Appellant's judgment of sentence without prejudice to Appellant's ability to litigate his ineffectiveness claims, or other cognizable issues, in a PCRA petition. ***Id***. at 4.

In this convoluted procedural history, it appears that Appellant's timely first PCRA petition, filed on May 23, 2012, was held in abeyance until the entry of the April 15, 2013 hybrid order which both imposed a new sentence and denied PCRA relief. However, when Appellant attempted to appeal both

the judgment of sentence and denial of PCRA relief in the April 15, 2013 order, a prior panel of this Court construed the appeal as being solely from the new judgment of sentence and therefore a direct appeal only. Thus, that direct appeal was pending when the simultaneous and intertwined attempted PCRA appeal was filed. Due to confusion caused by the trial court's hybrid orders, Appellant was directed by this Court to file a new PCRA petition, which he did on April 15, 2014, raising issues from his original PCRA petition. As noted, the PCRA court then denied Appellant's PCRA petition on May 13, 2015, and this timely appeal from that order followed.

Appellant's appeal from the denial of PCRA relief has never been addressed by this Court despite timely challenges. The reason Appellant's PCRA appeal escaped review was due to the hybrid orders of the trial court which constrained a prior panel of this Court to address the direct appeal issues only in 2014. Due to this breakdown in the judicial process, we conclude that this appeal from the denial of PCRA relief is properly before this Court.

On appeal, Appellant presents the following issues for this Court's consideration:

> I. Whether the Trial Court Erred In Denying the Claim of Ineffective Assistance of Counsel For Failure Of Trial Counsel To Object To The Prosecutor's Prejudicial and Inflammatory Statement In Closing Argument wherein the Prosecutor asked the jury to "Imagine … Sexual Assault/Rape Happening To You"?
>
> II. Whether the Trial Court Erred In Denying the Claim of Ineffective Assistance of Counsel For Failure of Trial Counsel To

Request, Prior To Trial, a Competency/Taint Hearing Where There Was Evidence of Taint?

III. Whether the Trial Court Erred In Denying the Claim of Ineffective Assistance of Counsel For Failure Of Trial Counsel To Introduce Any Evidence That [Appellant] Had A Healing Hernia Scar After The Victim Testified That He Saw No Scars On [Appellant]?

IV. Whether the Trial Court Erred In Failing To Analyze The Cumulative Effect Of Trial Counsel's Ineffectiveness In The Representation of [Appellant] In This Case?

Appellant's Brief at 4.

Our standard of review of a trial court order granting or denying relief under the PCRA requires us to determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Perez***, 103 A.3d 344, 347 (Pa. Super. 2014). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Lippert****,* 85 A.3d 1095, 1100 (Pa. Super. 2014).

All of Appellant's issues present averments of ineffective assistance of counsel. It is well settled that:

> a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, 606 Pa. at 21, 993 A.2d [874 at] 886 (2010) (citing ***Strickland*** [***v. Washington***, 466

- 6 -

U.S. 668, 104 S.Ct. 2052 (1984))]. In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [620] Pa. [60], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, 608 Pa. at 86–87, 10 A.3d at 291 (quoting **Commonwealth v. Collins**, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-312 (Pa. 2014).

In his first claim Appellant asserts that the trial court erred in denying the claim of ineffective assistance of counsel for trial counsel's failure to object to the prosecutor's statement in closing wherein the prosecutor asked the jury to imagine sexual assault "happening to you." Appellant's Brief at 21. We conclude that Appellant's argument takes the prosecutor's isolated comment out of context.

In Appellant's counsel's closing, he challenged the victim's memory and called the victim dishonest at least twelve times. N.T., 12/10/08, at 22, 23, 24, 25, 26, 27, 28, 29, 30, 33, 34, and 35. In countering those challenges to the victim's veracity and ability to remember specific details of the earliest sexual assaults, the prosecutor, in her closing, stated as follows:

> And then what happens? Then it progresses to pornography. And if this kid wanted to lie, he's told you about all these sex acts. Why doesn't he describe the pornography like he described what happened to him? Oh, yeah, I saw -- I saw a man put his penis inside a kid's butt and move it in and out; that's the kind of stuff I saw. If he's a liar, that's what he would have done.

> Out of all the time he saw pornography, he only has one specific image in his mind, two children undressing each other in a bathtub out in the grass. That doesn't sound like a home photograph. That sounds like child pornography. He could have made up stuff. He could have. If he's a big embellisher, there's a big opportunity. He can't remember. It was a long time ago. But he remembers there was porn.

> He tells you about the first time in the bedroom. Is it gross? Yes. Is it disgusting? Yes. Do you think it's disgusting to hear about? Imagine it happening to you.

> He tells you about the first time. He's in the bedroom. The defendant takes off his clothes. The defendant takes off [K.S.'s] clothes and his underclothes. He tells him to lay on his bed while he lays on his belly. The defendant pulls his penis out. He doesn't say he anally raped me. He pulled my legs apart. He climbed up onto the bed between my legs. He pulled my butt cheeks apart and pushed his penis in my butt and he moved in and out.

> Well, how was he? Where was his body? His chest was lying on my back. His hands were on my waist. He moved in and out, and he rolled off of me, and as I'm getting up -- because this kid is freaked out. He is in pain. He is scared. He's confused. They can say whatever they want. He was excited about a dad.

And if this kid had attachment issues, you think he hadn't attached? This kid would have clung to anybody who wanted to care for him. And he's getting out of there and, as he gets up, he sees semen coming out of Mr. Knipple and coming onto his chest.

Now, he doesn't sit there and observe it all or measure or look for the opening in the defendant's penis. He grabs his stuff and gets the hell out. And do you think it's weird to you that he ran across the street naked and no one saw it? Picture your own neighborhood. Picture going out to get your newspaper some morning in your Sponge Bob pajamas or your fluffy slippers, the times you go out quick and go back in and nobody sees you. This is evening. Nobody saw him. I wish they would have. He remembers this because it was traumatic.

He remembers the second time in the bathroom. Let's go through it again. Yuck. Yeah, yuck. Let's go through it again. [K.S.] had to. He's in the bathroom urinating. His pants are already down. The defendant comes in, tells him to get on his hands and knees, not his belly this time, on his hands and knees.

This ten year old is on his hands and knees, and he tells you how [the defendant] got soap, rubbed it on his penis, and the defendant pushed his penis inside of his butt, into his rectum, moved in and out and he made moaning sounds. And he doesn't remember how long. He's a liar? Come on, let's hear it. And oh, yeah, and then I saw him ejaculate. He's telling you that he remembered because it happened.

And then he says it happened more times in the bedroom, and he was able to say it was anal -- it was anal penetration. I can remember that, but I can't remember the details. You're not supposed to believe that either.

I have a fabulous analogy. Think hard, whether you're married or single. Your first date. If you're married  think about the first date with your spouse. Think about it. Remember it? Remember where you went, remember thoughts, feelings.

Tell me about your third date with your spouse or with somebody that you dated, somebody in your life, maybe your first love. Tell me what you did on your third date or your fourth.

What do you mean you don't remember? Well, you must not have had a third and fourth date because you'd remember everything. No, I had a third and fourth date. Same thing. He knows it happened again in the bedroom. I think it would be scary if he remembered every surrounding circumstance around it. That would be what a liar would provide. That would be what an embellisher would provide.

N.T., 12/10/08, at 50-53.

It is well settled that:

in reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. ***Commonwealth v. Sampson***, 900 A.2d 887, 890 (Pa. Super. 2006) (citation omitted). Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. ***Commonwealth v. Rios***, 554 Pa. 419, 721 A.2d 1049, 1054 (1998). This Court has observed that

> in defining what constitutes impermissible conduct during closing argument, Pennsylvania follows Section 5.8 of the American Bar Association (ABA) Standards. Section 5.8 provides:
>
> Argument to the jury.
>
> (a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
>
> (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
>
> (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

*Sampson*, 900 A.2d at 890, quoting American Bar Association (ABA) Standards, Section 5.8. In addition, we note the following:

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008) (internal citations and quotations omitted). We are further mindful of the following:

In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019-1020 (Pa. Super. 2009).

Here, however, the isolated comment was a reference to the victim's ability to remember specifically an instance of sexual assault. In *Commonwealth v. Rios*, 920 A.2d 790 (Pa. Super. 2007), this Court

explained a similar scenario involving a prosecutor's reference to one's ability to remember an event:

> [The appellant] contends that the prosecutor committed misconduct in stating "if I walk into this door and take out a gun and take one of you out and blow your brains out, you can bet...." N.T. 6/15/93 at 603. At this point trial counsel objected and moved for a mistrial. The court sustained the objection, instructing the prosecutor not to involve the jury in the case, but denied the motion for a mistrial. *Id*. [The appellant] contends, however, that the prosecutor's statements violate this Court's holding in *Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70, 76 (1980), that "[d]eliberate attempts to destroy the objectivity and impartiality of the finder of fact so as to cause the verdict to be a product of the emotion rather than reflective judgment will not be tolerated."
>
> An examination of the record shows, however, that the prosecutor was not attempting to emotionally charge the jury in hopes of obtaining a verdict based on such emotions. Rather, this argument was intended to illustrate merely that a witness to such a violent crime does not easily forget the identity of the perpetrator. After the trial court sustained the objection, the prosecutor tempered his argument by rephrasing the argument as follows: "If I take someone and shoot them [with] several people looking at me, and I run out, and they don't have my fingerprints, they are not going to say I didn't do it because the best evidence would be in front of their eyes ..." N.T. 6/15/9[3] at 603. **This makes it clear that the prosecutor was not intending to inflame the jury, but merely to illustrate that the situation was such as to make it unlikely that a person would not be able to later identify the perpetrator.** Further, prosecutorial comments will not require a mistrial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531, 536 (1986). The statements of which Appellant complains are not of this character. As such, his ineffectiveness claim fails.

*Rios*, 920 A.2d at 809-810 (emphasis added) (footnote omitted).

- 12 -

We conclude that as in *Rios*, the prosecutor here was not trying to inflame the jury in hopes of obtaining a conviction based on emotion. The challenged comment was a statement regarding memory and one's ability to recall certain events. Thus, the prosecution's statement was a permissible comment on defense counsel's attack on the victim's memory. Therefore, Appellant's counsel cannot be deemed ineffective for failing to challenge this statement because counsel cannot be deemed ineffective for failing to raise a meritless objection. *Commonwealth v. Staton*, 120 A.3d 277, 293 (Pa. 2015).

Next, Appellant argues that the PCRA court erred when it refused to find trial counsel ineffective for failing to request a competency/taint hearing pursuant to *Commonwealth v. Delbridge*, 855 A.2d 27 (Pa. 2003). Appellant's Brief at 28. We disagree.

In *Delbridge*, the Pennsylvania Supreme Court described taint as "the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques[.]" *Delbridge*, 855 A.2d at 30. The Court further explained that pretrial exploration as to whether a witness's memory was tainted is necessary "where there is some evidence that improper interview techniques, suggestive questioning, vilification of the accused and interviewer bias may have influenced a child witness to such a degree that the proffered testimony may be irreparably compromised." *Id*. at 39. Accordingly, taint is a legitimate question for examination in cases

- 13 -

involving complaints of sexual abuse made by young children. *Id*.

Additionally, the *Delbridge* Court opined that a competency hearing was the

proper forum for a determination of taint. *Id*. at 40.

> A decision on the necessity of a competency hearing is addressed to the discretion of the trial court. *Commonwealth v. Washington*, 554 Pa. 559, 722 A.2d 643, 646 (1998). The general rule in Pennsylvania is that every person is presumed competent to be a witness. Pa.R.E. 601(a). Despite the general presumption of competency, Pennsylvania presently requires an examination of child witnesses for competency. *Rosche* [*v. McCoy*, 156 A.2d 307] at 310 [(Pa. 1959)]; Pa.R.E. 601(b). The test for competency of immature witnesses was set forth in *Rosche*:

>> There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth.

> *Id*. (emphasis in original). The capacity of young children to testify has always been a concern as their immaturity can impact their ability to meet the minimal legal requirements of competency. Common experience informs us that children are, by their very essence, fanciful creatures who have difficulty distinguishing fantasy from reality; who when asked a question want to give the "right" answer, the answer that pleases the interrogator; who are subject to repeat ideas placed in their heads by others; and who have limited capacity for accurate memory.

*Delbridge*, 855 A.2d at 39-40.

> A competency hearing concerns itself with the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth. *Rosche*. A competency hearing is not concerned with credibility. Credibility involves an assessment of whether or not what the witness says is true; this is a

question for the fact finder. ***Washington***, 722 A.2d at 646. An allegation that the witness's memory of the event has been tainted raises a red flag regarding competency, not credibility. Where it can be demonstrated that a witness's memory has been affected so that their recall of events may not be dependable, Pennsylvania law charges the trial court with the responsibility to investigate the legitimacy of such an allegation. . . .

***Delbridge***, 855 A.2d at 40.

Finally, in order to initiate an investigation on the issue of taint, our

Supreme Court explained:

[T]he moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption. As this standard prevails in cases where the witness's memory may have been corrupted by insanity, mental retardation or hypnosis, we see no reason to alter it in cases where the memory of the witness is allegedly compromised by tainted interview techniques. Further, as the burden in all other cases involving incompetency is clear and convincing evidence, we will continue to apply that existing legal requirement for cases involving taint. The clear and convincing burden accepts that some suggestibility may occur in gathering the evidence, while recognizing that when considering the totality of the circumstances, any possible taint is sufficiently attenuated to permit a finding of competency. Finally, as with all questions of competency, the resolution of a taint challenge to the competency of a child witness is a matter addressed to the discretion of the trial court.

***Delbridge***, 855 A.2d at 40-41 (citations omitted).

Here, the PCRA court addressed Appellant's claim of error as follows:

[Appellant] now claims that "The question at this point is not whether taint conclusively existed with regard to the

- 15 -

victim[,] it is whether [trial counsel] should have requested a taint hearing to explore the issue of taint." ([Appellant's] Brief in support of PCRA Petition, pg. 23). We disagree. In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of it. Com. v. Delbridge, 578 Pa. 641, 855 A.2d 27, 40 (200[3]).

At [the] PCRA hearing, [Appellant] testified that he viewed a discovery [video] of the Jay, Maine, police interview with the victim regarding the victim's relationship with a four year old boy. [Appellant] stated that he heard the Maine detectives ask "leading and threatening questions." (N.T., 9/5/12, pg. 13.) As [Appellant] stated that he was trained in questioning children, he wanted his counsel to obtain an expert to testify on proper questioning techniques for abused or neglected children. [Appellant] said he was "trained by CASA to question children in ways that would not be leading but would be supportive … so they understood that they were not the ones to blame and the truth was what we really wanted." Id., pg. 19. We note that we are alerted to one specifically alleged improper question - - i.e. "Did [Appellant] do to you what you did to [the four-year-old boy?]"

Trial counsel enunciated his trial strategy, stating this was a "One victim case, that's the issue. And no forensic evidence, it comes down to credibility." Id., pg. 34. As to the interviews with the victim, counsel stated that the "questioning was crude and certainly not done by somebody who knew what they were doing." "There is really no way for me to challenge it." Id., pg. 35.

We note that [the] PCRA hearing testimony concerned only the Jay, Maine, interviews. The Maine detectives did not testify at trial. The trial transcript reveals that trial counsel was permitted to cross examine the victim regarding his interviews with Maine and Cambria County police, despite the Court's stated misgivings in permitting the line of questioning. (N.T., 12/8/08, pg. 185, 187-193). The victim also explained, on re-direct examination, the circumstances of the Maine interviews. Id., pg. 231-232.

Detective Moore of Cambria County wrote reports based on an unrecorded interview with the victim. Id., pg. 34. Review of the trial transcripts reveals that trial counsel successfully

established on cross examination that Detective Moore did not believe "there is a right way and wrong way to interview a child." (N.T., 12/8/08, pg. 262), and capably challenged Detective Moore's credibility while eliciting details about his interaction with the victim. Id., pgs. 263-269).

Cross-examination techniques employed by counsel will not be second guessed by the courts, provided that it was based on a strategic decision made by counsel. Com. v. Thuy, 424 Pa.Super. 482, 623 A.2d 327 (1993). Based on the victim's and detective Moore's testimony, we find no prejudice to [Appellant], and further find that counsel did not perform deficiently as to cross-examination on the issue of exploring the interview techniques conducted by police.

PCRA Court Opinion, 12/6/12, at 4-5.

After review, we find that Appellant failed to establish evidence of taint in order to be entitled to a competency/taint hearing under **Delbridge**. Moreover, Appellant's counsel's choice to forgo a competency/taint hearing was a reasonable strategic decision. On cross-examination, counsel aptly delved into the victim's interviews with police and challenged the credibility of the detective who interviewed the victim in this case. Because we have decided that counsel's decision had a reasonable strategic basis, Appellant's claim fails. **See Commonwealth v. Reed**, 42 A.3d 314, 324 (Pa. Super. 2012), *appeal denied*, 114 A.3d 416 (Pa. 2015) ("If a reasonable basis exists for the particular course, the inquiry ends and counsel's performance is deemed constitutionally effective.").

Next, Appellant contends that the trial court erred in not finding trial counsel ineffective for his failure to introduce evidence that Appellant had a visible, healing hernia scar despite the victim's testimony that he did not see

a scar on Appellant. Appellant's Brief at 36. We conclude that no relief is due.

On cross-examination, trial counsel asked the victim if he had seen any tattoos or scars on Appellant's body. N.T., 12/8/08, at 220. The victim answered in the negative. *Id*. In his PCRA petition, Appellant avers that, at the time the victim lived with him, Appellant had a visible hernia repair scar. Thus, Appellant posits that if trial counsel had asked Appellant if he had any scars, Appellant's response could have impeached the victim's statement that he did not notice any scars. Appellant's Brief at 40.

As stated above, in order to be entitled to PCRA relief, Appellant must be able to establish that the ineffective assistance of counsel so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place, and that but for counsel's omission, the result of the proceeding would have been different. *Spotz*, 84 A.3d at 311-312. Our Supreme Court has held that "ineffectiveness of counsel claims may not be raised in a vacuum." *Commonwealth v. Morris*, 684 A.2d 1037, 1045 (Pa. 1996) (citations omitted). "A determination of ineffectiveness cannot be based on conjecture concerning **alleged physical evidence that has never been admitted into evidence**." *Id*. (emphasis added). In the case *sub judice*, Appellant argues that trial counsel failed to introduce a photograph of the scar as it existed at the time of the alleged abuse. However, no photograph of the scar was presented to the PCRA

court. Accordingly, there is no basis for this Court to deduce that trial counsel's omission so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Id*.; 42 Pa.C.S. § 9543(a)(2)(ii). Furthermore, to the extent that Appellant argues that trial counsel was ineffective in failing to ask him if he had such a scar at trial, we agree with the PCRA court that Appellant has failed to show prejudice. We thus discern no error in the PCRA court denying relief on this claim of error.

Finally, Appellant argues that the trial court erred in failing to analyze the cumulative effect of the alleged ineffective assistance of counsel. After review, it is our determination that this assertion is meritless.

Our Supreme Court "has repeatedly held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Koehler*, 36 A.3d 121, 161 (Pa. 2012) (citing *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009)). The Supreme Court continued:

> Thus, to the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 671 (2008). When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed. *Johnson*, 966 A.2d at 532 (citing *Commonwealth v. Perry*, 537 Pa. 385, 644 A.2d 705, 709 (1994), for the principle that a new trial may be awarded due to cumulative prejudice accrued through multiple instances of trial counsel's ineffective representation).

***Koehler***, 36 A.3d at 161. Accordingly, we must address our conclusions with respect to Appellant's first three issues.

In Appellant's first issue, he argued that counsel was ineffective for failing to object to allegedly inflammatory remarks made by the prosecution in closing. We found this claim was meritless. Next, we determined that Appellant's second allegation of ineffectiveness, which was based on counsel's failure to pursue a taint hearing pursuant to ***Delbridge***, was also meritless. We found that trial counsel had a reasonable basis for not pursuing the taint hearing and that Appellant failed to establish that a taint hearing was even proper. Finally, in Appellant's third issue, wherein he asserted that trial counsel was ineffective for failing to introduce a photograph of a hernia repair scar or to question him at trial about such a scar, we concluded that Appellant did not establish ineffectiveness because no photograph of this scar was introduced at the PCRA hearing and that Appellant was not prejudiced by the failure to question him about the scar at trial. Therefore, all of Appellant's claims were rejected for lack of merit except for the failure to ask him about the scar. However, while we concluded that Appellant was not prejudiced by trial counsel's failure to question him regarding the scar, this single finding does not provide a basis for an **accumulation** of prejudice claim. ***Koehler***, 36 A.3d at 161.

For the reasons stated in the foregoing, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

P.J. Gantman and Justice Fitzgerald Concur in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2016