J-S59011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
COLIN T. DEGNAN :
:
Appellant : No. 3838 EDA 2017

Appeal from the Judgment of Sentence October 27, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001512-2017

BEFORE: GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED JANUARY 23, 2019**

Appellant, Colin T. Degnan, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions of strangulation, simple assault, terroristic threats, and recklessly endangering another person ("REAP").[1] We affirm.

The trial court opinion fully sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. We add only that Appellant filed a post-sentence motion to extend his surrender date, which the court allowed, but he did not raise any other issues in the motion such as challenges to the weight of the evidence or the court's sentence.

On appeal, Appellant raises the following claims for review:

(1) WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR

_____

[1] 18 Pa.C.S.A. §§ 2718(a)(2), 2701(a), 2706(a)(1), and 2705, respectively.

FAILING TO CALL AN EXCULPATORY WITNESS ON BEHALF OF APPELLANT.

(2) WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION FOR RECONSIDERATION OF SENTENCE.

(3) WHETHER THE TRIAL COURT [ERRED] IN ALLOWING THE SUBMISSION OF UNAUTHENTICATED PHOTOGRAPHS.

(4) WHETHER THE TRIAL COURT ERRED IN CONSIDERING THE CONTRADICTORY AND INCREDIBLE [TESTIMONY] OF [VICTIM].

(5) WHETHER APPELLANT WAS PREJUDICED BY THE FAILURE OF THE TRIAL COURT JUDGE AND THE REPLACEMENT JUDGE TO FILE AN OPINION, IN VIOLATION OF PA.R.A.P. 1925.

(Appellant's Brief at 4).

As a preliminary matter, we observe a petitioner should wait until collateral review to raise claims of ineffective assistance of counsel, and generally the court should defer those claims to proceedings under the Post Conviction Relief Act ("PCRA") at 42 Pa.C.S.A. §§ 9541-9546. *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002) and its progeny. Our Supreme Court has also held:

> By way of summary, we hold that *Grant*'s general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel; we disapprove of expansions of the exception to that rule recognized in [*Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), *cert. denied*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004); and we limit *Bomar*, a case litigated in the trial court before *Grant* was decided and at a time when new counsel entering a case upon post-verdict motions was required to raise ineffectiveness claims at the first opportunity, to its pre-

*Grant* facts. We recognize two exceptions, however, both falling within the discretion of the trial judge. First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims. …

Second, with respect to other cases and claims, including cases such as *Bomar* and the matter *sub judice*, where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA. In other words, we adopt a paradigm whereby unitary review may be available in such cases only to the extent that it advances (and exhausts) PCRA review in time; unlike the so-called *Bomar* exception, unitary review would not be made available as an accelerated, extra round of collateral attack as of right. … This exception follows from the suggestions of prior Court majorities respecting review of prolix claims, if accompanied by a waiver of PCRA review.

*Commonwealth v. Holmes*, 621 Pa. 595, 598-99, 79 A.3d 562, 563-64 (2013) (most internal citations omitted). Absent these qualifications, an appellate court will not entertain ineffective assistance of counsel claims for the first time on direct appeal. *Id.*

As a separate initial matter, generally, a challenge to the weight of the evidence must be preserved in a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

> (1) orally, on the record, at any time before sentencing;

> (2) by written motion at any time before sentencing; or

> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "[T]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004). A claim challenging the weight of the evidence typically must be raised while the trial court still "exercises jurisdiction over a matter since '[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.'" *Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa.Super. 2003). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court addresses the claim in the court's Rule 1925(a) opinion. *Id.* at n.3.

Instantly, Appellant's first and second issues on appeal assert charges of ineffective assistance of trial counsel in fairly generic ways. Further, he raised them for the first time in his Rule 1925(b) statement. Moreover,

Appellant did not make a knowing, intelligent, and voluntary waiver of PCRA review. Thus, we decline to entertain issues one and two on this direct appeal, as they are better raised in a timely PCRA petition, where Appellant can clarify, refine, and develop them for review. *See Holmes, supra*; *Grant, supra*.

Appellant's fourth issue on appeal pertains to Victim's trial testimony, which Appellant characterizes as a challenge to the sufficiency of the evidence, but argues the testimony was incredible and contradictory. As presented, his claim actually critiques the weight the trial court gave Victim's testimony. Appellant did not properly preserve a weight issue, so he has waived it on appeal. *See* Pa.R.Crim.P. 607 and *Comment*; *Commonwealth v. Wall*, 953 A.2d 581 (Pa.Super. 2008), *appeal denied*, 600 Pa. 733, 963 A.2d 470 (2008) (explaining claim that verdict was against weight of evidence shall be raised with trial judge in motion for new trial orally, on record, at any time before sentencing, by written motion at any time before sentencing, or in post-sentence motion, pursuant to Pa.R.Crim.P. 607(A); purpose of rule is to ensure claim is raised with trial court or claim will be waived); *Burkett, supra* (explaining failure to use any of prescribed methods for presenting weight issue to trial court constitutes waiver of that claim on appeal, even if trial court addresses it in Rule 1925(a) opinion). Therefore, we refuse to give Appellant's fourth claim on appeal any further attention.

With respect to Appellant's remaining issues, he argues the photographs of Victim's injuries admitted into evidence at trial were highly prejudicial and

unauthenticated. Appellant also complains the trial judge retired without writing an opinion and the successor judge did not write one. Appellant asserts he could not submit a "complete compendium of issues for appeal" without a trial court opinion, which prejudiced his appeal.[2] Appellant concludes we must vacate the judgment of sentence and order a new trial. We disagree.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Zachary C. Shaffer, we conclude Appellant's issues three and five merit no relief. The trial court opinion systematically addresses and properly disposes of those questions. (*See* Trial Court Opinion, filed December 27, 2018, at 9-10, 7) (finding: **(3)** Victim properly authenticated photos of injuries she sustained in attack by Appellant; **(5)** record reflects trial judge's reasoning for its decisions, so successor judge was able to rely on that reasoning to draft Rule 1925(a) opinion; Appellant's claim merits no relief). The record supports the court's analysis, which we see no reason to disturb. Accordingly, as to issues three and five, we affirm based on the trial court's opinion.

Judgment of sentence affirmed.

_____

[2] Per this Court's order of December 5, 2018, the trial court drafted and filed an opinion addressing the issues Appellant raised in his Rule 1925(b) statement. Appellant fails to cite any relevant legal authority that compels the trial court to file an opinion before Appellant files an appellate brief. Rule 1925(a) alone does not stand for that proposition.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/19

**FILED**

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

2018 DEC 27 AM 10: 47

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

     v.

COLIN DEGNAN

:
:
:
:
:
:
:
:

CP-51-CR-0001512-2017

SUPERIOR COURT
3838 EDA 2017

## OPINION

SHAFFER, J.                                      December 11, 2018

### I.    INTRODUCTION

The following appeal concerns Colin Degnan ("Appellant"), who was charged and

prosecuted following a violent assault against his then-romantic partner, Susan Robb

("Complainant"). Following a waiver trial on August 25, 2017, the Honorable Judge Pamela

Dembe found Appellant guilty of Strangulation (F2), Terroristic Threats (M1), Simple Assault

(M2), and Recklessly Endangering Another Person ("REAP") (M2). Appellant was sentenced on

October 27, 2017 to a term of ten to twenty-three months' incarceration followed by four years'

probation. On appeal, Appellant raises issues of the authority of this Honorable Court, ineffective

assistance of counsel, authentication, sufficiency and weight of the evidence.

### II.    FACTUAL & PROCEDURAL HISTORY

On January 16, 2017, Appellant and Complainant were at Appellant's home watching a

football game with Appellant's roommate, Malcolm Thomas ("Thomas"), and Appellant's

friend, Katie. *N.T. 8/25/17* at 5. Appellant and Complainant had walked over together from

Complainant's apartment, where Appellant had helped Complainant with some chores which she

could not otherwise complete due to her broken wrist. *Id.* at 26. All were drinking. *Id.* at 6.

CP-51-CR-0001512-2017 Comm. v. Degnan, Colin T.
Opinion

8206887881

Complainant testified that she had four to five beers over three and a half hours. *Id.* at 6 and 27. Appellant had somewhere between ten to fifteen beers over the same time and was drunk "by legal definition." *Id.* at 7, 27 and 50. Defense Counsel attempted to elicit testimony that Complainant had taken pain killers while drinking; however, Complainant denied taking anything, and stated that the painkillers she had were extra-strength Ibuprofen, not "oxy or anything like that." *Id.* at 41 and 51. When the game ended, between 11:00 and 11:30pm, Katie left, Thomas went to sleep, and Appellant and Complainant went to Appellant's bedroom. *Id.* at 6.

On direct examination, Complainant then recounted five individual violent encounters that night with Appellant. First, Appellant shoved Complainant in the chest twice while in Appellant's bedroom. *Id.* at 6-7. Complainant testified that she exclaimed, "awl, fuck, my arm" in a "louder tone of voice." *Id.* at 6 and 30. Appellant responded, "shut the fuck up." *Id.* at 6.

Second, Appellant shoved Complainant two to three times in Appellant's kitchen against the fridge and countertop, causing pronounced bruising to Complainant's back and buttocks. *Id.* at 8-9. After Complainant got her dog from Appellant's bedroom, she left Appellant's home and went to her house three blocks away. *Id.* at 10. Frightened, she took a different walking path home than she normally would. *Id.* When Complainant arrived home, Appellant was already in her living room, having let himself in with keys she had given him. *Id.* Appellant confirmed this, stating that he went over to get his stuff and when she saw him in her living room she said, "what are you doing here." *Id.* at 55.

This led to the third encounter, when Appellant shoved Complainant in her kitchen, again against the stove top, but with more force than before, causing the knobs to dig into her buttocks. *Id.* at 11. Complainant tried to push Appellant back and screamed, "in attempt to get attention

from possibly [her] roommate or the neighbors." *Id.* at 12. Appellant then squeezed Complainant's face with his thumb on one side of her mouth and his fingers on the other side, and told her to "shut the fuck up." *Id.* at 12 and 32. Complainant attempted to knee Appellant in the genitals, and Appellant said "Don't you ever do that to me again, you fucking piece of shit." *Id.* at 12. Complainant then testified that Appellant threw her to the ground with "as much force as he could." *Id.* After wrestling briefly on the floor, Complainant got up, and darted to the stairs, where the fourth incident occurred. *Id.* at 12-13.

Appellant grabbed Complainant from behind, turned her around and slammed her against the wooden staircase. *Id.* at 13. Appellant grabbed Complainant by the arms and, again, slammed her against the stairs approximately three times. *Id.* Appellant then put both hands around Complainant's throat for about ten to fifteen seconds. *Id.* Complainant had difficulty breathing at this time, and could not speak. *Id.* at 14. Appellant finally relented, allowing Complainant to get up and gather Appellant's belongings for him which had been accumulated at Complainant's home during the relationship. *Id.* When Complainant returned with Appellant belongings, Appellant had Complainant's phone and said, "I'm not going to allow you to call the police," and attempted to leave with Complainant's phone. *Id.* at 14-15. When Complainant blocked him from leaving with it, Appellant said, "Fine. I'm going to take your dog." *Id.* at 15. Complainant then ran upstairs to her room and brought her dog inside. *Id.* Complainant attempted to barricade the door, but Appellant got a hand inside the door before she closed it, where the fifth encounter occurred. *Id.*

Appellant thrust the door open with such force that the mirror fell off the wall. *Id.* Appellant threw everything off of Complainant's dresser then shoved Complainant onto her bed. *Id.* Complainant tried to get up, but Appellant pushed her back down approximately two to three

more times. *Id.* Complainant said, "ouch watch my wrist," and Appellant replied "I'll break your other wrist," then pulled back his fist, before putting his hand down without striking Complainant. *Id.* at 16. While on the bed, and on top of Complainant, Appellant held Complainant down with one arm, and put one hand around her neck for just a moment. *Id.* Next, Appellant grabbed a pillow, and placed it over Complainant's face. *Id.* Complainant could not breath. *Id.* At this point Complainant was "just succumbing and hoping it would be over." *Id.* Finally, Appellant released Complainant, got up, left the room, walked down the stairs, and as he was about to leave Complainant's apartment, he grabbed her work bag. *Id.* at 17. When she followed him to retrieve it, Complainant got locked out. *Id.* Appellant let Complainant back in, using a credit card from her wallet, then returned inside with her. *Id.* at 18. Complainant pleaded with Appellant, "I don't know why you're doing this. But I know this isn't you." *Id.* Appellant looked Complainant in the eye and said, "I know exactly what I'm doing." *Id.*

Appellant finally left Complainant's apartment at approximately 2:30am. *Id.* at 19. Complainant's roommate had not been home the night of the incident, but Complainant told him what happened the next morning when she saw him. *Id.* at 23 and 40. She sent a message about the incident to a friend the next morning. *Id.* at 38. Complainant went to the police station on January 18, 2017 to report the incident. *Id.* at 24. Complainant had the locks changed "as soon as [her] landlord could come out and do it," which was about 2 weeks. *Id.* at 39.

The Commonwealth entered exhibit C-1 which are photos that Complainant's roommate took of Complainant's injuries following the attack by Appellant. *Id.* at 22. On direct examination, the following exchange occurred on the record:

> MS. GREENBERG: Your Honor, I would like to ask to mark this C-1 collectively, 9 photographs.
> MR. GIL: All the ones in discovery. I'm okay.
> MS. GREENBERG: May I approach the witness?
> THE COURT: Yep.
> BY MS. GREENBERG:

Q.     Ma'am, I'm showing you what is marked collectively C-9 (*sic*). Take a moment look over these, look up at me when you're done, please.

Q.     Do you recognize C-1, ma'am?

A.     I do.

Q.     What are these?

A.     These are photos of bruising that was on my body taken the following evening after the incident.

Q.     So these are - - are these injuries as a result of the incident that you just described?

A.     Correct.

Q.     And are they a fair and accurate representation of what you looked like after this incident?

A.     Yes.

Q.     Who took the photos?

A.     My roommate.

Q.     May I publish?

A.     Objection to authorization. There's no time stamps on the photographs, there's no indication of how the photographs were kept.

THE COURT: Doesn't matter how they're kept. But she just said these were taken the next day.

MS. GREENBERG: Thank you.

*Id.* at 21-22.

There was some discrepancy regarding what and how much Complainant had to drink that evening, and whether or not she had taken any narcotics that evening. Thomas, Appellant's roommate testified that he observed Complainant drink a bottle of wine and "several" beers, but confirmed that he "wasn't paying attention." *Id.* at 43-44. Thomas testified that he had been watching football all day and "had probably like four beers throughout the day," but "everybody was kind of had a buzz going," and that he "fell asleep pretty quickly," when he went to bed after the game, "around 11:30/midnight." *Id.* at 44, 46, and 48. Appellant additionally testified that Complainant drank a bottle of wine by herself, Coors Light, and "a glass of bullet bourbon 10 year aged whiskey," and took the last of her pain medication. *Id.* at 49-50 and 51.

Additionally, Thomas and Appellant both testified that the walls are thin, and had an altercation occurred, Thomas would have alerted to it. *Id.* at 45 and 53-54. Appellant testified that the five instances of assault simply did not occur: he never shoved her, squeezed her face, put his hands around her neck, or held a pillow over her face. *Id.* at 53, 56 and 57. Appellant

acknowledged that he went over to Complainant's house without her knowledge or permission, and knowing that Complainant did not want him there. *Id.* at 68-69.

At sentencing, Judge Dembe stated, "What I see is somebody who fabricated a version of the story at trial. It was asked by the presentence investigators to provide confirming information about various items and didn't respond or leave a forwarding address." *N.T. 10/27/17*, 9. She told Appellant, "You're a drunk...And I don't see any real signs of changing. Moving doesn't do it. Getting away from the people you were with is a start, but your problem is longstanding and serious enough that that's not going to do it." *Id.*

### III.    PROCEDURAL HISTORY

Following a waiver trial on August 25, 2017, the Honorable Judge Pamela Dembe found Appellant guilty of Strangulation (F2), Terroristic Threats (M1), Simple Assault (M2), and Recklessly Endangering Another Person ("REAP") (M2). Appellant was sentenced on October 27, 2017 to a term of ten to twenty-three months' incarceration followed by four years' probation. Appellant surrendered to the Court on November 20, 2017. On November 22, 2017, Appellate Counsel entered his appearance and filed a notice of appeal with the Superior Court. On December 11, 2017 an order under Pa.R.A.P. 1925(b) was filed. As of January 1, 2018, the Honorable Judge Dembe was no longer sitting in criminal court. As of January 19, 2018, when Appellant filed an untimely motion for an extension of time to obtain and review the trial transcripts, this case had not yet been reassigned.

This Honorable Court was assigned this case by the Supervising Judge on February 22, 2018. Upon review, this Honorable Court granted Appellant's motion for an extension of time and a Concise Statement of Matters Complained of on Appeal was filed on Appellant's behalf on April 4, 2018. On April 27, 2018, this Honorable Court received written communication from the

Page 6 of 14

Office of Judicial Records that the file had been ordered to be transmitted without an opinion on February 20, 2018. Subsequently, this Honorable Court received communication from the Superior Court on December 5, 2018 that a 1925(a) Opinion was to be filed by this Court. This opinion follows.

## IV.   DISCUSSION

Appellant enumerated ten individual complaints on appeal. This Court finds four discernable issues: 1) that this Honorable Court is without sufficient knowledge of the case to issue an opinion in this matter; 2) that Trial Counsel provided ineffective assistance of counsel; 3) that the Commonwealth's exhibit C-1 was improperly authenticated; 4) that the Commonwealth's evidence was insufficient to sustain Appellant's conviction on any of the charges levied against him; and 5) that the weight of the evidence was against Appellant's conviction.

### A.   Authority of This Honorable Court

First, this Court addresses Appellant's complaint that:

> The trial court judge retired prior to writing an opinion and therefore the instant court cannot possibly have sufficient knowledge of the issues involved herein to draft a competent and accurate opinion, all to the prejudice of the appellant.

*1925(b) Statement*, ¶ 6. Appellant's claim is without merit. First, as a court sitting in the same jurisdiction, in the same division, and in the same courthouse, this Honorable Court has full access to the Court of Sessions file, which holds the original evidence admitted and reviewed by the Honorable Judge Dembe. Second, this Honorable Court has made a full review of the transcripts made from both the trial and sentencing hearings and has rendered its own independent determination of the facts, consistent with Judge Dembe's. Third, Judge Dembe sufficiently put her reasoning on the record at sentencing, which this Court has relied upon in crafting its opinion. Appellant's complaint on this Court's ability to write a 1925(a) opinion without causing Appellant prejudice is entirely meritless.

## B. Ineffective Assistance of Counsel

Appellant states in his 1925(b) Statement:

> Trial counsel for appellant was ineffective in that, inter alia, he neglected to call witnesses that could have provided exculpatory evidence for appellant, in addition to failing to file a Motion for Reconsideration of Sentence.

*1925(b) Statement,* ¶ 1.

The Pennsylvania Supreme Court held equivocally in *Commonwealth v. Grant*, 813 A.2d 726 (2002) that:

> [A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity.

*Id.* at 738. Here, Appellant prematurely raises matters of ineffective assistance of counsel, and therefore such review should be deferred until collateral review.

However, even if this Honorable Court were to address Appellant's complaint on direct appeal, it is without merit. As this Pennsylvania Supreme Court has explained:

> [T]o establish that counsel was ineffective for failing to present a witness, a defendant must prove: the existence and availability of the witness, that the trial counsel was aware of, or had a duty to know of the witness; that the witness was willing and able to cooperate and appear on the defendant's behalf, and the proposed testimony of the uncalled witness would have been helpful to the defense asserted at trial.

*Commonwealth v. Morris*, 684 A.2d 1037, 1044 (1996) *citing Commonwealth v. Stanley*, 632 A.2d 871 (1993).

Here, Appellant has done nothing more than make a vague claim of ineffectiveness providing no additional information on who these alleged witnesses are, what testimony they'd offer, and whether Trial Counsel was ever made aware of their existence let alone any colorable claim of innocence sufficient to assert that Complainant mistook Appellant for someone else who attacked her, leaving recorded injuries, in Appellant's home and then in her own home.

Therefore, Appellant's claim is without merit and any surviving claim of ineffective assistance of counsel should be deferred to collateral review.

### C. Authentication of Injury Photos

Appellant states in his 1925(b) statement:

> The trial court erred in admitting photographs without proper authentication as to time and location of its preparation introduced by the Commonwealth

*1925(b) Statement,* ¶ 7.

Pa.R.E. § 901.08, states that photographs fall under the category of illustrative or demonstrative evidence and may be properly authenticated where the proponent proves that the item:

(1) Fairly and accurately represents, illustrates, or is a picture of the actual item in the case; or

(2) Fairly and accurately shows what the witness saw at the relevant time; or

(3) Fairly replicates or reconstructs the conditions that existed at the time of the event...

Here, on direct examination, the following exchange occurred on the record:

MS. GREENBERG: Your Honor, I would like to ask to mark this C-1 collectively, 9 photographs.
MR. GIL: All the ones in discovery. I'm okay.
MS. GREENBERG: May I approach the witness?
THE COURT: Yep.
BY MS. GREENBERG:
Q. Ma'am, I'm showing you what is marked collectively C-9 (*sic*). Take a moment look over these, look up at me when you're done, please.
Q. Do you recognize C-1, ma'am?
A. I do.
Q. What are these?
A. These are photos of bruising that was on my body taken the following evening after the incident.
Q. So these are - - are these injuries as a result of the incident that you just described?
A. Correct.
Q. And are they a fair and accurate representation of what you looked like after this incident?
A. Yes.
Q. Who took the photos?
A. My roommate.
Q. May I publish?
A. Objection to authorization. There's no time stamps on the photographs, there's no indication of how the photographs were kept.
THE COURT: Doesn't matter how they're kept. But she just said these were taken the next day.
MS. GREENBERG: Thank you.

*N.T. 8/25/17*, 21-22. During trial, the Commonwealth adequately laid foundation for the photos of Complainant's injuries. Complainant established that the photos reflected how her injuries looked the day after she was attacked by Appellant comporting with all three ways that Pa.R.E. § 901.8 lays out for proper authentication. Therefore, Appellant's complaint on the authentication of the photographs is without merit.

### D. Sufficiency of the Evidence

Next, Appellant asserts that the facts and evidence presented by the Commonwealth were insufficient to sustain his conviction. *1925(b) Statement*, ¶¶ 8-9. To preserve a sufficiency claim, a Rule 1925(b) statement "must specify the element or elements upon which the evidence was insufficient so [the Superior Court] can then analyze the element or elements on appeal." *Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017). Here, Appellant failed to present his claim with the level of specificity dictated by the Superior Court. Therefore, this issue is deemed waived.

However, should the Superior Court find Appellant's issue is preserved, this Court proceeds as follows. On sufficiency review, all evidence is viewed in the light most favorable to the verdict winner to determine whether "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (2014). The Commonwealth may meet its burden "by means of wholly circumstantial evidence." *Id.* Finally, the reviewing court "may not weigh the evidence and substitute [its] judgment for the fact-finder." *Id.*

Here, the most serious charge Appellant was convicted of is Strangulation. The legislature has stated that, "A person commits the offense of strangulation if the person knowingly or

intentionally impedes the breathing or circulation of the blood of another person by...blocking the nose and mouth of the person." 18 Pa.C.S. § 2718(a)(2).

On more than one occasion, Appellant put his hands around Complainant's neck, making it difficult to breathe. *N.T. 8/25/17*, 13 and 14. On another occasion that night, Appellant took one of Complainant's pillows from her bed and held it over her face. *Id.* at 16. Complainant was "just succumbing and hoping it would be over." *Id.* The Commonwealth sufficiently proved each element for strangulation, including that Appellant did so either knowingly or intentionally. Therefore, Appellant's challenge to the sufficiency of the evidence is without merit.

### E. *Weight of the Evidence*

Finally, Appellant raises numerous issues alluding to the assertion that his conviction was against the weight of the evidence. *1925(b) Statement*, ¶¶ 2-5. A defendant is not entitled to a new trial based on a weight of the evidence claim unless the verdict "is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (2008). Appellate review is limited to whether the trial judge palpably abused its discretion in denying the appellant's motion for a new trial. *Id.* As such, a "trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Id.* at 879-80. A conviction may be sustained on wholly circumstantial evidence, and the trier-of-fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. 2010). Any doubts as to a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007). To have a new trial, a defendant "must have a stronger foundation than a reassessment of the credibility of witnesses."

*Id.* Instead, the trial court must determine whether, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.*

Specifically, Appellant raises these complaints:

> 2. The testimony of the complainant was so incredible and contradictory that it should have been excluded and it was error on the part of the trial court to allow the admission of her testimony in considering its verdict.
>
> 3. The trial court erred in failing to exclude the testimony adduced from the complainant after it was established that she lied about not having been on any painkillers at the time of the incident, which would have affected her ability to accurately and truthfully recall the alleged incident.
>
> 4. The trial court failed to adequately take into consideration the fact that the appellant's roommate was in the bedroom right next to where the alleged incident reportedly occurred, yet heard none of the loud noises to which complainant testified.
>
> 5. The trial court erred in failing to take into consideration the extended period of time after the alleged incident that the complainant waited before contacting the authorities and that complainant waited approximately two weeks thereafter before changing the locks on the door to which appellant had the keys.

*1925(b) Statement,* ¶¶ 2-5. Appellant offered no evidence other than his own biased testimony and that of his roommate, Thomas. Neither offered any incontrovertible evidence and the trial court held Complainant to be more credible than either of Appellant's witnesses. *See Commonwealth v. Burton supra.*

Of the three witnesses who testified, Appellant was the only one who testified to being intoxicated "by legal definition." *N.T. 8/25/17*, 50. Finally, Complainant's injuries speak for themselves. Complainant was with no one else that night, Appellant provided no alibi for his whereabouts, and there is no reported lapse of time left unaccounted for in Complainant's narrative. Her injuries are consistent with the series of attacks she described. *Id.* at 6-7, 8-9, 10, 11, 12-13, 14-15, 16, 22, 30 and 32. Finally, Appellant confirmed that he went over to Complainant's house after she left, and when she found him in her living room, she asked "What are you doing here?" *Id.* at 55. The Trial Court heard and considered the evidence admitted and

reasonably found the weight of the evidence to be in the Commonwealth's favor. Therefore, Appellant's complaint as to the weight of the evidence is meritless.

## V.   CONCLUSION

For the reasons stated herein, Appellant's convictions for Strangulation (F2), Terroristic Threats (M1), Simple Assault (M2), and REAP (M2) should be affirmed on all evidentiary grounds, and Appellant's ineffective assistance of counsel claim should be deferred until collateral review.

BY THE COURT:

ZACHARY C. SHAFFER, J.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0001512-2017 |
| | : | |
| | : | |
| | : | |
| | : | SUPERIOR COURT |
| COLIN DEGNAN | : | 3838 EDA 2017 |

## PROOF OF SERVICE

I hereby certify that I am this ___ day of December, 2018, serving the foregoing Opinion on the persons indicated below, by first class mail:

Louis B. Priluker, Esquire
One Abington Plaza, Suite 202
Jenkintown, PA 19046

Lawrence Good, Esquire
Appeals Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Shana P. Weiner, Esquire
Law Clerk to the Honorable Zachary C. Shaffer