J-S48018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LEON WASHINGTON, | : | |
| | : | |
| Appellant | : | No. 3250 EDA 2018 |

Appeal from the PCRA Order Entered October 11, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0014192-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LEON WASHINGTON | : | |
| | : | |
| Appellant | : | No. 3251 EDA 2018 |

Appeal from the PCRA Order Entered October 11, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0015916-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LEON WASHINGTON | : | |
| | : | |
| Appellant | : | No. 3252 EDA 2018 |

Appeal from the PCRA Order Entered October 11, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0015917-2008

J-S48018-20

BEFORE:  KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 1, 2020**

Appellant, Leon Washington, appeals from the order entered in the Philadelphia County Court of Common Pleas, which dismissed his first petition under the Post Conviction Relief Act ("PCRA").[1]  After careful review, we affirm in part, vacate in part, and remand for further proceedings consistent with this decision.

The relevant facts and procedural history of this appeal are as follows. Appellant's convictions stem from two shootings that took place in West Philadelphia on July 24, 2008 ("the Robinson Street Shooting") and July 30, 2008 ("the Ruby Street Shooting").  The instant appeal concerns the Ruby Street Shooting only, which the trial court described as follows:

> [O]n July 30, 2008, a second shooting took place in the neighborhood.  This time it was on Ruby Street between Ludlow and Chestnut.  Near sundown, eyewitness Levi Green walked toward the front door of his home at 40 South Ruby Street to call his ten-year-old daughter, Victoria, to come inside.  The girl was playing up the street on the front steps of a friend's house at 30 South Ruby, near the Ruby–Ludlow intersection.  Before she turned around to go home, Victoria looked down the block and noticed several people arguing outside a bar at the corner of Ruby and Chestnut. Aware of mounting tension, Victoria and her friend decided to go inside the friend's house immediately, but before they were safely inside, one of the men outside the bar, dressed in all black, pulled something out of his pocket and pointed north toward Ludlow Street.  Victoria saw flashes, and a bullet pierced her left leg as she ran for cover.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

- 2 -

From a half block away, the initial shots sounded like firecrackers to Victoria's father, Levi Green. But when he reached his front door, he heard several loud cannon-like booms coming from the opposite direction. As he ducked, Green saw light flashes as gunfire erupted near 36 South Ruby, in between his home and the steps where Victoria had been playing. The second round of shots was aimed south toward Ruby and Chestnut where the man dressed in black had been standing as he fired north toward Ludlow. When the shooting stopped, Levi Green looked up and saw a man on the ground outside his house. The man had been shot. Meanwhile, Green ran to help his daughter Victoria.

Within minutes, patrolling officers arrived on the scene. They found a man later identified as Anthony Mitchell, walking near Ruby and Ludlow with a gunshot wound to the leg. Although several bystanders warned officers that Mitchell was armed, a search revealed no gun. Officers then transported Mitchell to a hospital.

At approximately the same time, additional responding officers were flagged down near 113 South Ruby, just south of the Chestnut Street intersection. There, they found [Appellant] laying on the sidewalk in a white t-shirt and boxer shorts with gunshot wounds to his arm and side. Police later discovered 113 South Ruby was [Appellant's] aunt's residence. The officers placed [Appellant] in the back of their car and rushed him to the hospital. On the way, [Appellant] claimed he was simply walking down Ruby Street when he suddenly heard gunshots and got hit.

Back at the Ruby Street crime scene, other police officers found eight .45 caliber cartridge casings and one live round outside the corner bar where the gunman who shot Victoria had been standing. Subsequent analysis by Officer John Cannon of the Philadelphia police Firearms Unit (who testified as a firearms expert at trial) concluded those shell casings were fired by the same gun used to shoot Lyndon McBride six days earlier. *See* N.T. 6/10/10 at 99–100. No shell casings were found near 36 South Ruby, suggesting that the second gunman had used a revolver which, unlike the semiautomatic handgun used outside the corner bar, does not expel fired cartridges.

- 3 -

When detectives arrived at the hospital to question Mitchell and [Appellant], they found the two men gesturing back and forth as they received treatment in beds just a few feet apart. Both men initially refused to give formal statements, but each was arrested for shooting the other.

The following day, [Appellant] changed his mind and decided to talk to police. His new account of the events the night before on Ruby Street differed significantly from what he told the officers as they drove him to the hospital. [Appellant] now claimed he was at 113 South Ruby, the home of his aunt, Sophia Dessus, when he noticed two women arguing near Ludlow Street. He claimed that he and a friend walked to the corner of Ruby and Chestnut and began arguing with the women, further antagonizing them. According to [Appellant], one of the women phoned a man named Jameer, who drove up moments later and started shooting.

Unpersuaded by [Appellant's] story and knowing that the cartridge casings found at the July 24 and July 30 shootings were from the same gun, detectives executed a search warrant on [Appellant's] house at 413 South Ruby approximately eighteen hours after the second shooting. The house had been unguarded by the police during the interim and the gun was not found.

(Trial Court Opinion, dated December 28, 2012, at 3-5).

The Commonwealth charged Appellant in connection with both shootings with three counts each of attempted murder, aggravated assault, conspiracy to commit murder, violations of the Uniform Firearms Act ("VUFA"), carrying a firearm on public property in Philadelphia, possessing instruments of crime ("PIC"), terroristic threats, simple assault, and recklessly endangering another person ("REAP"). The trial court granted the Commonwealth's motion to consolidate the cases, and Appellant proceeded to a jury trial in June 2010.

At the conclusion of the Commonwealth's evidence, the trial court

granted Appellant's motion for judgment of acquittal on the attempted murder charges relating to the Ruby Street Shooting, but denied it as to all other counts. Ultimately, the jury found Appellant guilty on the aggravated assault, PIC, and VUFA charges. On August 17, 2010, the trial court sentenced Appellant to an aggregate term of fifteen to thirty years' imprisonment, followed by five years of state-supervised probation. This Court affirmed the judgment of sentence on May 16, 2014, and Appellant did not file a petition for allowance of appeal. *See Commonwealth v. Washington*, 104 A.3d 50 (Pa.Super. 2014) (unpublished memorandum).

On May 7, 2015, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition on December 3, 2016. On May 18, 2017, the Commonwealth filed a motion to dismiss the petition without an evidentiary hearing. On June 7, 2018, the PCRA court issued its Pa.R.Crim.P. 907 notice of intent to dismiss the petition without a hearing. Appellant did not respond to the Rule 907 notice, and the PCRA court dismissed the petition without a hearing on October 11, 2018.

On November 8, 2018, Appellant timely filed separate notices of appeal for each of the underlying dockets.[2] The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and none was filed.

Appellant raises the following issue on appeal:

---

[2] This Court subsequently consolidated the appeals *sua sponte*.

Where a PCRA petition raises substantial issues of material fact should the court hold an evidentiary hearing to determine whether relief should be given?

(Appellant's Brief at 11).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super. 2012).

To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. We stress that an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.

*Commonwealth v. Roney*, 622 Pa. 1, 17-18, 79 A.3d 595, 604-05 (2013), *cert. denied*, 574 U.S. 829, 135 S.Ct. 56, 190 L.Ed.2d 56 (2014) (internal citations and quotation marks omitted).

Although Appellant includes one issue in his statement of questions presented, he actually raises two distinct arguments. In his first argument, Appellant asserts that trial counsel was ineffective for failing to call an

eyewitness, Denya Martin. Appellant posits that Martin would have testified that she witnessed the Ruby Street Shooting, and she saw that Appellant did not have a firearm. Appellant further asserts that Martin was available and willing to testify on his behalf at trial. Based upon the foregoing, Appellant maintains trial counsel's decision not to call Martin was unreasonable. Appellant also avers that the PCRA court erred in denying relief on this claim, because it speculated about whether trial counsel had a rational basis for not calling Martin. Appellant concludes some relief is warranted. We agree.

Pennsylvania law presumes counsel has rendered effective assistance. **Commonwealth v. Williams**, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. **Commonwealth v. Kimball**, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Williams, supra**.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." **Commonwealth v. Pierce**, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim."

***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

"[T]he PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Mason***, 634 Pa. 359, 388, 130 A.3d 601, 618 (2015) (citation and quotation marks omitted). "Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Id.*** (citations and quotation marks omitted).

Importantly, "the reasonableness of an attorney's strategic or tactical decision making is a matter that we usually consider only where evidence has been taken on that point" by the PCRA court. ***Commonwealth v. DuPont***, 860 A.2d 525, 533 (Pa.Super. 2004). In general, to enable appellate review, PCRA courts must provide a "legally robust discussion, complete with clear findings of fact where required." ***Commonwealth v. Montalvo***, 631 Pa. 516, 531, 114 A.3d 401, 410 (Pa. 2015).

Prejudice is established when [an appellant] demonstrates

that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [**Kimball, supra**], we held that a criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002)

(some internal citations and quotation marks omitted).

For claims of ineffectiveness based upon counsel's failure to call a witness:

A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness. In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial.

*Commonwealth v. Cox*, 603 Pa. 223, 267-68, 983 A.2d 666, 693 (2009)

(internal citations omitted). A petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 597 Pa. 402, 441, 951 A.2d 1110, 1134 (2008).

Further, a PCRA petitioner's request for an evidentiary hearing

must include a certification, signed by the petitioner, as to each intended witness, identifying the witness's name, address, date of birth, the expected substance of his or her testimony, and any documents material to that testimony. 42 Pa.C.S. § 9545(d)(1). Failure to substantially comply

with this requirement will render the proposed witness's testimony inadmissible. ***Id.***

***Commonwealth v. Lippert***, 85 A.3d 1095, 1097 (Pa.Super. 2014) (quoting ***Commonwealth v. Robinson***, 596 Pa. 580, 581, 947 A.2d 710, 711 (2008)).

Instantly, Appellant's amended PCRA petition includes an affidavit by Denya Martin, claiming she was an eyewitness to the Ruby Street Shooting. Martin alleged that Appellant did not possess or use a firearm that day. Further, Martin averred that she informed the police that Appellant did not have a firearm.

With respect to the Ruby Street Shooting, Appellant's petition argued he was present at the scene but he was a mere victim. No one directly identified Appellant as the shooter, nor was there any direct evidence that Appellant possessed or used a firearm. Instead, the Commonwealth proved its case by circumstantial evidence, linking Appellant's presence at the scene with a casing that matched a firearm that Appellant was seen using several days before. Thus, the main issue at trial was whether Appellant was a victim or a participant in the Ruby Street Shooting. According to Appellant, Martin's testimony would bolster his claim that he was a victim.

The PCRA court evaluated Appellant's claim and found that trial counsel had a reasonable basis for failing to call Martin as a witness, because the proposed testimony in her affidavit was inconsistent with her July 30, 2008 police statement. In its current state, however, the record does not support such a finding. We emphasize that Martin's July 30, 2008 statement to police

- 10 -

provided the following:

> I got off work at [2:30] and went home. I went to get my daughter at 55th and Chestnut around 6:00 pm. I went over to Ruby street to see my Grandmother who lives at unit [S] Ruby Street. My stepsister Deleah lives right there also at 25 S. Ruby Street. I was at Ruby and Ludlow when I saw a group of guys walking toward me. There was another group coming from behind me. I had a feeling they were gonna fight. I had [my] daughter with me and there were other kids outside playing. I went to stop the fight that was gonna happen. They were arguing and talking about getting guns. There was a fat guy there arguing with a taller guy with braids. **[A] guy I know as "Hatty" walked off like he was going to get a gun**. He walked towards Chestnut Street. I went to go into the house cause I knew there would be a shooting. I heard gunshots and ran inside. I looked out and saw the fat [guy[3]] on the ground. He had a silver gun in his hand. I went back to my grandmother's house and the police arrived and came and got me.

(Commonwealth's Motion to Dismiss, filed 5/18/17, at Appendix A) (emphasis added).

After providing the above narrative, the police asked Martin the following series of questions:

> Q. You were also shown a single photo. Do you recognize it?
>
> A. Yes, that's "Hatty" (Indicating [Appellant]).
>
> Q. **Did you see him with a gun?**
>
> A. **No.**

(*Id.*) (emphasis added).

Although the PCRA court found that Martin's subsequent affidavit

---

[3] The "fat guy" identified in this statement references Anthony Mitchell.

- 11 -

contradicted her statement to the police, the affidavit specifically provided:

> I was an eyewitness to the shooting which happened on 7-30-2008 at Ruby Street between [Chestnut] and Ludlow in Philadelphia. I gave a statement to the police that day on 7-30-2008. After the shooting that I witnessed with my own eyes. **I know for a fact that Haddee a/k/a [Appellant] who was a shooting victim that day. Was not a person shooting a gun. Nor, did I see him with a gun.** As I told the police I saw Haddee a/k/a [Appellant] standing at the corner of Chestnut in front of the bar. When shots were fired. I saw him turn around to run when he was shot in his back.
>
> There were two separate crowds on both corners of Chestnut and Ruby. And another crowd of individuals at [Ruby] and Ludlow. I've known Haddee a/k/a [Appellant] several years before this incident. And I specifically told the police that Haddee never had a gun in his hand at the time of the shooting on the day it happened.
>
> I heard Haddee a/k/a [Appellant] was convicted for the shooting. Being that I was "eyewitness" who made a statement the day of the shooting to the police about what I witnessed. I was available and willing to testify on Haddee a/k/a [Appellant's] behalf. I was never contacted by anyone after giving my statement.
>
> I am available and willing to testify for [Appellant] to assist him to be exonerated of a crime that he never committed. I witnessed the shooting with my own eyes and bullets flew in my directions. … The shooter looks nothing like Haddee a/k/a [Appellant]. It is imperative that his lawyer contact me in a timely manner to appear at a hearing in court.

(Amended PCRA petition, filed 12/3/16, at Exhibit "B").

The PCRA court found that Martin's statement to the police that Appellant "walked off like he was going to get a gun," contradicted her statement in the affidavit claiming Appellant did not have a gun. According to the PCRA court, Martin's police statement established that Appellant was

not merely an innocent bystander, but rather he was "someone she thought was going to be a participant in a street fight with guns." (PCRA Court Opinion, filed 8/30/19, at 2). However, Martin's police statement never indicated that she saw Appellant use or possess a firearm. In fact, when the police officer specifically asked Martin if she saw Appellant with a gun, Martin replied "No." (*See* Martin's Police Statement, 7/30/08, at R. 175). Nothing in Martin's police statement concerning whether Appellant used or possessed a firearm actually contradicts the content of her affidavit. Therefore, contrary to the PCRA court's conclusion, the two statements are consistent.

Because the PCRA court did not hold an evidentiary hearing, the best resolution of this issue is to remand for a hearing on trial counsel's decision not to call Martin as a witness. *See Montalvo, supra*; *DuPont, supra*. Following the hearing, the PCRA court can make the credibility determinations and factual findings necessary for a proper evaluation of trial counsel's effectiveness.

In his second argument, Appellant argues that trial counsel was ineffective for failing to have the clothing that Appellant wore during the Ruby Street Shooting tested for gunshot residue. Appellant claims that because his defense was that he was not the shooter, the absence of gunshot residue "could have been a major factor in bringing about a different verdict…." (Appellant's Brief at 22). Appellant concludes the PCRA court erred in finding that he failed to explain how this evidence could have altered the outcome of

trial. We disagree.

Boilerplate allegations, without more, cannot provide the basis for PCRA relief. *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1250 (2006) (finding ineffectiveness claim insufficient when appellant "failed to set forth his claim pursuant to the three-prong *Pierce* test for establishing an ineffective assistance of counsel claim"); *Commonwealth v. Bracey*, 568 Pa. 264, 273 n. 4, 795 A.2d 935, 940 n. 4 (2001) ("[A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief"). In making assertions of ineffectiveness, a claimant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective. *See Commonwealth v. Durst*, 522 Pa. 2, 5, 559 A.2d 504, 506 (1989). Ineffectiveness of counsel claims may not be raised in a vacuum. *Commonwealth v. Morris*, 546 Pa. 296, 312, 684 A.2d 1037, 1045 (1996).

Instantly, in support of his argument, Appellant merely cites to a published report by Dr. Boris deKorczak, dated November 3, 1999. Dr. deKorczak's report is not specific to the facts and issues in this case. Instead, it appears that Appellant is attempting to offer a generic expert report in support of his claim. Thus, Appellant failed to comply with the PCRA's requirement that he include a signed certification regarding an expert witness who would have favorably testified for him on this issue. *See Lippert, supra*.

Additionally, the PCRA court found that this claim was weakened by the trial evidence establishing that Appellant was wearing only a t-shirt and boxers at the time of his arrest. Specifically, Dessus testified that Appellant was wearing shorts and a t-shirt, and not just his underwear when he left her home. However, after the shooting, Appellant was found wearing only a t-shirt and boxers—he was not wearing his shorts. Based upon this evidence, the PCRA court found that a reasonable inference could be drawn that Appellant removed his clothing after the shooting occurred. The PCRA court determined that Appellant failed to establish how the absence of gunshot residue would have changed the outcome of his trial. As the record supports the PCRA court's determination, we conclude that the court made no legal error in this regard. **See Boyd, supra**. Therefore, Appellant is not entitled to relief on his second argument.

Based upon the foregoing, we affirm the order dismissing Appellant's PCRA petition in part, vacate in part, and remand for an evidentiary hearing limited to the issue of trial counsel's decision not to call Martin as a witness.

Order affirmed in part, reversed in part, and case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/01/2020