J-S12041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERREN KEITH STUCKEY | : | |
| | : | |
| Appellant | : | No. 1416 MDA 2022 |

Appeal from the PCRA Order Entered September 22, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000306-2016

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                          **FILED JULY 27, 2023**

Appellant, Jerren Keith Stuckey, appeals from the order of the Court of Common Pleas of Dauphin County (trial court) that dismissed his first petition filed under the Post Conviction Relief Act (PCRA)[1] without a hearing.  For the reasons set forth below, we vacate the dismissal of Appellant's PCRA claim that is the subject of this appeal and remand the case to the trial court for further proceedings on that claim.

On October 20, 2016, Appellant was convicted by a jury of first-degree murder for the shooting death of Rayon Braxton (Victim).  ***Commonwealth v. Stuckey***, No. 851 MDA 2017, slip op. at 1, 5-6 (Pa. Super. June 26, 2018)

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  42 Pa.C.S. §§ 9541–9546.

(unreported memorandum). Victim was found shot to death on the evening of November 27, 2015 in a warehouse that he was leasing and using to host parties. *Id.* at 1-2, 4-5.

The evidence at trial showed that Appellant was at the warehouse at the time of the shooting and left the warehouse shortly after gunshots were heard in the area of the warehouse. N.T. Trial, 10/18/16, at 204-09, 281-82, 285-94; N.T. Trial, 10/19/16, at 478, 488. Sean Edmonds, who worked as a disc jockey at parties at the warehouse, testified that he heard gunshots as he was arriving at the warehouse after 6:30 p.m. on November 27, 2015 for a party that night. N.T. Trial, 10/18/16, at 278-84. Edmonds testified that when he entered the warehouse 15 or 20 seconds after he heard the gunshots, he saw Appellant coming down the stairs and that Appellant said "Oh, my God, watch out, they're up there shooting." *Id.* at 281-82, 285-88, 292-94, 308. He testified that he jumped back and let Appellant, who was wearing a hooded sweatshirt go out, and that he saw Appellant get into a car and drive away in reverse without turning on the headlights. *Id.* at 288-94, 308, 314. Edmonds testified that he then left the warehouse and went to a nearby store for help. *Id.* at 294-96. Edmonds testified that he and a person from the store headed back to the warehouse, that two women walked into the building ahead of them, and that when he went upstairs in the warehouse, he saw one of the women step back in shock and then saw Victim's body lying on the floor. *Id.* at 296-98, 317-18. He testified that he did not see Appellant holding anything

in his hands and did not see a gun on Appellant when Appellant was coming down the stairs and leaving the warehouse. *Id.* at 301. In addition, Appellant admitted to a police officer that he was at the warehouse. N.T. Trial, 10/19/16, at 478, 488.

Nathaniel Kump, who lived at a veterans' home near the warehouse, testified that he was sitting outside on the evening on November 27, 2015 in view of the entrance to the warehouse and heard six or seven gunshots. N.T. Trial, 10/18/16, at 200-06. Kump testified that after he heard the gunshots, he looked in the direction where they were coming from and saw a man run out of the warehouse and get into a gray car with a missing hubcap that he had seen before at the warehouse and that he had seen Appellant drive. *Id.* at 205-09. He testified that the gray car then drove away from the warehouse in reverse at a high rate of speed and that before the car left, he saw another man briefly near the warehouse door. *Id.* at 205, 210-13. Kump testified that after the car left, he called 911 and walked toward the warehouse, saw a man from a nearby grocery store accompanied by another man go into the warehouse, and saw two women walk toward the warehouse. *Id.* at 213, 216-19. Kump further testified that after he heard the gunshots, he kept his eyes trained on the warehouse door, except for a second when the car passed him, and that no one else came out of the warehouse. *Id.* at 219-20.

Evidence was introduced that the warehouse had only one entrance. N.T. Trial, 10/17/16, at 27-31; N.T. Trial, 10/18/16, at 379. The

Commonwealth repeatedly stressed in both its opening statement and closing argument that Appellant was the only person seen leaving the warehouse after the gunshots were heard and that this demonstrated that Appellant was the person who killed Victim. N.T. Opening Statements, 10/17/16, at 2, 8-9, 12, 16; N.T. Closing Arguments, 10/19/16, at 36-37, 39, 48, 54-55.

The seven bullets that were found in Victim's body and at the murder scene, the seven spent cartridge casings found at the scene, and the live cartridges found at the scene that had sufficient markings were all discharged or ejected from the same gun, but the gun was not found. N.T. Trial, 10/18/16, at 387-88, 391-93. 395-98, 427-30, 434-36. The car that was seen leaving the warehouse was found parked outside Appellant's girlfriend's apartment and one of the two identifiable fingerprints from the car was Appellant's. N.T. Trial, 10/18/16, at 331-36, 339-41, 402. A hooded sweatshirt found in the car had gunshot residue on the left sleeve and front, but the right sleeve of the sweatshirt had only particles that could also have come from non-gunshot sources, and DNA testing of blood stains on the sweatshirt did not produce any interpretable results. *Id.* at 402-05; N.T. Trial, 10/19/16, at 450-52, 463-67.

One of Victim's friends testified that Appellant told her that Victim owed Appellant money and that if Victim did not repay the money, Appellant "was going to do what a man had to do and that he was going to kill [Victim]." N.T. Trial, 10/17/16, at 154-56, 158-60. Other Commonwealth witnesses,

- 4 -

however, testified that Appellant's financial dispute with Victim appeared to have been resolved in the summer of 2015. *Id.* at 76-77, 113-21. When Victim was found, he had over $362 in cash in his pockets. N.T. Trial, 10/18/16, at 414. Appellant did not testify at trial. N.T. Trial, 10/19/16, at 556-57.

On October 20, 2016, following the jury's verdict, the trial court sentenced Appellant to life imprisonment without parole. N.T. Trial, 10/20/16, at 592-98. Appellant filed a timely direct appeal and this Court, on June 26, 2018, affirmed Appellant's judgment of sentence. *Commonwealth v. Stuckey*, 193 A.3d 1113 (Pa. Super. 2018) (table). Appellant did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On April 25, 2019, Appellant filed a timely counseled first PCRA petition in which he asserted multiple claims of ineffectiveness of counsel, including a claim that his trial counsel was ineffective for failing to interview and call Gregory S. Jackson as a witness. Appellant asserted in his PCRA petition and witness certification that Jackson would have testified that he was near the warehouse at the time of the shooting, that he saw another man fleeing the warehouse after Appellant's vehicle backed away, and that he did not see Kump at the location where Kump had testified that he was when he saw people entering and leaving the warehouse. PCRA Petition ¶21(d); Amendment to PCRA Petition, Witness Certification for Gregory S. Jackson. The Commonwealth in its opposition to Appellant's PCRA argued that this claim

should be dismissed without a hearing because Jackson's criminal history made him incredible and asserted that Appellant had not shown that Jackson was available and willing to testify at trial, that trial counsel knew of or should have known of Jackson's existence, or that the testimony would have been helpful to Appellant, given the evidence against him. Amended Response to PCRA Petition at 11-12.

On July 13, 2020, the trial court issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss all of Appellant's PCRA claims without a hearing. In this notice, the trial court stated that no hearing was necessary on Appellant's claim concerning failure to call Jackson as a witness on the grounds that it was "unclear" whether Jackson would have been available to testify, that Jackson could not have been a credible witness because he had *crimen falsi* convictions and may have been in prison at the time of the murder, and that some of the testimony that Appellant contended that Jackson would give would be merely cumulative of the evidence at trial concerning Kump's observations and ability to observe. Trial Court Memorandum Opinion and Order, 7/13/20, at 19-20. Appellant filed a response to the trial court's Rule 907 notice, in which he argued with respect to Jackson that *crimen falsi* convictions do not preclude a witness from being found credible or render testimony inadmissible and that Jackson's testimony would have supported Appellant's defense by showing that there was another person present when the shooting occurred. Objections to Rule 907 Notice at 5.

On September 22, 2020, the trial court entered an order dismissing Appellant's PCRA petition in its entirety without a hearing. Trial Court Order, 9/22/20. Appellant's PCRA counsel did not file an appeal from this order within thirty days, but new PCRA counsel filed a petition for collateral relief seeking reinstatement of Appellant's appeal rights *nunc pro tunc*. On September 27, 2022, the trial court entered an order reinstating *nunc pro tunc* Appellant's right to appeal the September 22, 2020 order dismissing his PCRA petition. This timely appeal followed.[2]

The lone issue before the Court in this appeal is whether the trial court erred in dismissing Appellant's PCRA claim concerning trial counsel's failure to call Jackson as a witness without holding an evidentiary hearing. Appellant's Brief at 4. A PCRA petitioner does not have an absolute right to a hearing on his claims for relief. **Commonwealth v. Grayson**, 212 A.3d 1047, 1054 (Pa. Super. 2019); **Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa. Super. 2012); **Commonwealth v. Barbosa**, 819 A.2d 81, 85 (Pa. Super. 2003). A PCRA court may properly dismiss a PCRA claim without a hearing if there is no

_____

[2] Appellant's notice of appeal stated that he was appealing both the September 22, 2020 order dismissing the PCRA petition and the September 27, 2022 order reinstating his appellate rights. The appeal is only from the September 22, 2020 order and the September 27, 2022 order was referenced in the notice of appeal only to make clear that the appeal was timely. Appellant's Response to Rule to Show Cause. The erroneous statement that the appeal was also from the September 27, 2022 order may be excused and does not invalidate the appeal. **See Commonwealth v. Fretts**, 271 A.3d 383, 387 n.2 (Pa. Super. 2021) (error concerning date of order appealed does not invalidate appeal where it is clear what order was appealed); Pa.R.A.P. 105(a).

genuine dispute with respect to the facts on which the claim is based and those facts preclude relief or if it is clear from the record that the claim is patently without merit. Pa.R.Crim.P. 907; ***Commonwealth v. Epps***, 240 A.3d 640, 645 (Pa. Super. 2020); ***Wah***, 42 A.3d at 338.

The PCRA court, however, must hold a hearing on a PCRA claim where material facts are disputed and those disputed factual issues have not been addressed at a prior evidentiary hearing in the case. Pa.R.Crim.P. 908(A)(2); ***Commonwealth v. Santiago***, 855 A.2d 682, 691 (Pa. 2004); ***Grayson***, 212 A.3d at 1054-55. "'Generally, 'if there are factual issues to be resolved,' the PCRA court should hold an evidentiary hearing." ***Grayson***, 212 A.3d at 1054-55 (quoting ***Commonwealth v. Morris***, 684 A.2d 1037 (Pa. 1996)). A court may not summarily dismiss a PCRA claim where disputed facts alleged in the petition, if proven, would entitle the defendant to relief. ***Grayson***, 212 A.3d at 1055; ***Barbosa***, 819 A.2d at 85-86. It is this Court's responsibility on appeal to determine whether the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. ***Grayson***, 212 A.3d at 1054; ***Wah***, 42 A.3d at 338.

The PCRA claim at issue here asserted ineffective assistance of Appellant's trial counsel for failure to call a witness at trial. To be entitled to relief on a claim of ineffective assistance of counsel, the defendant must prove: (1) that the underlying claim is of arguable merit; (2) that counsel's

action or inaction had no reasonable basis designed to effectuate his client's interest; and (3) that he suffered prejudice as a result of counsel's action or inaction. *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015); *Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa. Super. 2020); *Wah*, 42 A.3d at 338. Failure to call a witness can constitute ineffective assistance of counsel only where the defendant shows that the witness existed, was available, and was willing to testify on the defendant's behalf; that trial counsel knew or should have known of witness's existence; and that the absence of the witness's testimony prejudiced the defendant. *Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009); *Commonwealth v. Orner*, 251 A.3d 819, 825 (Pa. Super. 2021) (*en banc*); *Selenski*, 228 A.3d at 16.

Here, Appellant alleged that his trial counsel would have known of Jackson as a possible witness if he had conducted a proper investigation of the issues that Appellant raised with him prior to and during trial and that Jackson would have testified. PCRA Petition ¶¶20, 21(d), 22; Amendment to PCRA Petition, Witness Certification for Bernard Wojciechowski; Objections to Rule 907 Notice at 5. Neither the trial court nor the Commonwealth point to anything in the record that would make it impossible for Appellant to prove these allegations. The only fact that either the trial court or the Commonwealth contend negated Appellant's ability to prove that trial counsel should have known of Jackson and that Jackson was available and willing to

testify was that Jackson was imprisoned at the time of Appellant's trial, and the trial court concluded only that this made it "unclear to [the court] whether Gregory Jackson would have been available to testify." Trial Court Memorandum Opinion and Order, 7/13/20, at 19. Appellant argues that Jackson's imprisonment would not have prevented him from testifying because he could have obtained Jackson's testimony at trial by a transport order or writ of *habeas corpus ad testificandum*. Neither the trial court nor the Commonwealth has disputed that an incarcerated witness's testimony may be obtained by these means. We therefore cannot conclude that it was undisputed that Appellant could not prove that Jackson was available and was willing to testify on his behalf and that trial counsel should have known of Jackson's existence.

The critical issue is therefore whether the trial court could determine without a hearing that the failure to call Jackson as a witness could not have prejudiced Appellant. The trial court concluded that Jackson could not have been a credible witness and his testimony therefore could not have benefitted Appellant because it appeared from Jackson's criminal record that Jackson was incarcerated at the time of the murder and because his numerous *crimen falsi* convictions "would render his testimony non-credible." Trial Court Memorandum Opinion and Order, 7/13/20, at 20. We do not agree. While it may well be established at a hearing that Jackson's testimony could not have been sufficiently credible to be beneficial to Appellant, the record does not

show that Jackson could not have witnessed what he claims to have seen and his credibility in light of his *crimen falsi* convictions cannot be determined without a hearing.

The trial court based its conclusion that Jackson was incarcerated when the shooting occurred and therefore could not have been present in the area of the warehouse on docket entries in the following six 1996, 1998, and 2016 criminal cases: CP-36-CR-0002030-1996; CP-36-CR-0001491-1998; CP-36-CR-0001574-1998; CP-36-CR-0001575-1998; CP-22-CR-0005507-2016; CP-22-CR-0006063-2016. Trial Court Memorandum Opinion and Order, 7/13/20, at 20 & n.4. The 1996 and 1998 docket entries show that on April 9, 1999, Jackson received sentences of incarceration of 1 year, 1 month, and 3 days to 3 years, 5 to 10 years, 10 to 20 years, and 1 year and 23 days to 2 years, with no information on whether the sentences ran consecutively or concurrently. CP-36-CR-0002030-1996 Docket Entries at 2; CP-36-CR-0001491-1998 Docket Entries at 2; CP-36-CR-0001574-1998 Docket Entries at 2; CP-36-CR-0001575-1998 Docket Entries at 2. Absent further information that is not in the record, it cannot be determined that Jackson was incarcerated on any of those sentences in November 2015, which was more than 16 years after the sentences were imposed. The two remaining dockets, from 2016, indicate that Jackson was not incarcerated in early 2016, as early as two months after the crime at issue here, and do not set forth any dates

- 11 -

that Jackson was in prison prior to 2016. CP-22-CR-0005507-2016 at 2; CP-22-CR-0006063-2016 at 1-2.

The trial court's conclusion that Jackson had multiple *crimen falsi* convictions, is supported by the record and is undisputed. The docket entries cited by the trial court show a burglary conviction and several robbery and theft convictions. CP-36-CR-0002030-1996 Docket Entries at 2; CP-36-CR-0001491-1998 Docket Entries at 2; CP-36-CR-0001574-1998 Docket Entries at 2; CP-36-CR-0001575-1998 Docket Entries at 2; CP-22-CR-0005507-2016 at 2. The fact that a witness has *crimen falsi* convictions, however, does not require that the witness's testimony be found incredible. *Commonwealth v. Murphy*, 134 A.3d 1034, 1039-40 (Pa. 2016) (rejecting challenge to weight of the evidence despite Commonwealth witness's *crimen falsi* convictions); *Commonwealth v. Dunkins*, 229 A.3d 622, 634 (Pa. Super. 2020), *aff'd*, 263 A.3d 247 (Pa. 2021) (rejecting claim that prosecution witness's *crimen falsi* conviction made verdict against weight of the evidence because it was exclusively within jury's province to assess that witness's credibility). Even where credibility is highly suspect, a PCRA court cannot dismiss a PCRA claim on the ground that the witness is incredible without holding a hearing at which it can assess the witness's credibility or making an assessment of actual testimony or statements by the witness. *Commonwealth v. D'Amato*, 856 A.2d 806, 825-26 (Pa. 2004); *Commonwealth v. Williams*, 732 A.2d 1167, 1180-81 (Pa. 1999); *Commonwealth v. Smith*, 436 EDA 2020, at 10-15

(Pa. Super. July 30, 2021) (unpublished memorandum). Because the trial court held no hearing on Appellant's PCRA petition and never heard Jackson testify, it could not dismiss Appellant's claim on the ground that Jackson could not have been a credible witness.

The trial court also characterized Jackson's proffered testimony as cumulative, and the Commonwealth contends that its absence could not have prejudiced Appellant in light of the other evidence of Appellant's guilt. Trial Court Memorandum Opinion and Order, 7/13/20, at 20; Appellee's Brief at 9. Neither of these contentions can sustain the dismissal of Appellant's PCRA claim without a hearing.

The testimony that Appellant contends that Jackson would have given was different from any of the other testimony at trial. Appellant asserted that Jackson would have testified that he saw another person run from the warehouse after Appellant's car drove away. PCRA Petition ¶21(d); Amendment to PCRA Petition, Witness Certification for Gregory S. Jackson. No other such testimony was introduced at trial. To the contrary, the testimony at trial was that Appellant was the only person seen leaving the warehouse after the shooting. N.T. Trial, 10/18/16, at 204-20, 281-95.

To prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. **Commonwealth v. Jones**, 210 A.3d 1014, 1018-19 (Pa. 2019); **Mason**, 130 A.3d at 618; **Commonwealth v. Stewart**, 84 A.3d

701, 707 (Pa. Super. 2013) (*en banc*). This does not require proof that the defendant would more likely than not have been acquitted or convicted of a lesser offense. *Jones*, 210 A.3d at 1019; *Johnson*, 966 A.2d at 541; *Stewart*, 84 A.3d at 714-15 & n.5. Rather, a reasonable probability of a different result sufficient to show prejudice is a probability sufficient to undermine confidence in the outcome. *Jones*, 210 A.3d at 1019; *Commonwealth v. Postie*, 200 A.3d 1015, 1023 (Pa. Super. 2018) (*en banc*); *Stewart*, 84 A.3d at 707, 714-15 & n.5. In analyzing whether there is a reasonable probability that the result of the proceeding would have been different if a witness had testified, this Court must consider the case as it was tried, not whether the Commonwealth could have presented a different theory on which the defendant could have been convicted in response to the witness's testimony. *Johnson*, 966 A.2d at 542-43.

Here, the evidence showed that Appellant was at the warehouse at the time of the shooting and fled after the shooting, looking worried or scared and telling Edmonds, who had arrived at the warehouse just after the gunshots, that there was someone upstairs in the warehouse shooting. N.T. Trial, 10/18/16, at 204-09, 281-82, 285-94, 308. There was, however, no conclusive evidence that Appellant was the shooter. Edmonds testified that he did not see a gun on Appellant when Appellant was coming down from an upper story of the warehouse and leaving the building. *Id.* at 301. There was also no evidence connecting Appellant to the gun that was used to kill Victim;

- 14 -

that gun was not left at the scene and was never found. *Id.* at 385-401, 429-30, 435. Rather, the Commonwealth argued at trial that Appellant had to be the person who shot Victim because Appellant was the only person seen fleeing the warehouse after the shooting. N.T. Opening Statements, 10/17/16, at 2, 8-9, 12, 16; N.T. Closing Arguments, 10/19/16, at 36-37, 39, 48, 54-55. Testimony that another person fled the warehouse after Appellant left, if a jury could find that witness credible, would negate the Commonwealth's basis for contending that Appellant was the shooter, rather than a person who was merely with Victim when another person opened fire, and could affect the jury's verdict. The absence of such testimony therefore cannot be held non-prejudicial absent a determination, after a hearing, that there is no reasonable probability that the jury would find the witness credible. *Johnson*, 966 A.2d at 542-43.

For the foregoing reasons, the trial court erred in concluding that there were no genuine issues of material fact in controversy with respect to Appellant's claim that trial counsel was ineffective for failure to call Jackson as witness and in determining without conducting an evidentiary hearing that Jackson could not be found credible. We therefore vacate the trial court's order insofar as it dismissed Appellant's claim that trial counsel was ineffective for failure to call Jackson as witness and remand this case with instructions that the trial court hold a hearing on that PCRA claim.

Order vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/27/2023